**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sonnie DAVIS, Defendant–Appellant,**

v.

**Kevin DAVIS, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Kevin DAVIS, Defendant–Appellee.**

Nos. 89–10415, 89–10416, 89–10451 and 90–10055.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 18, 1991.

Decided April 17, 1991.

As Amended on Denial of Rehearing June 24, 1991.

Francia M. Welker, Oakland, Cal., for defendant-appellant, Sonnie Davis; Stephen Shaiken, San Francisco, Cal., for defendant-appellant-cross-appellee, Kevin Davis.

Rory K. Little, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee-cross-appellant.

Before TANG and NOONAN, Circuit Judges, and SHUBB,[1] District Judge.

SHUBB, District Judge:

## I.  OVERVIEW

This case involves a conspiracy to distribute heroin and an attempt to kill a potential

---

**1.** Honorable William B. Shubb, United States District Judge for the Eastern District of California, sitting by designation.

government witness. Sonnie Davis appeals the denial of a motion to suppress evidence supporting his conviction for possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1). He argues the evidence supporting the conviction should have been suppressed as the fruit of an unlawful search. Kevin Davis appeals his conviction for attempting to prevent a witness from testifying in a federal case in violation of 18 U.S.C. § 1512(a). He contends procedural errors and a lack of sufficient evidence against him provide bases for reversing his conviction. The United States cross-appeals Kevin Davis' sentence arguing the district court failed to sentence him under the appropriate guideline. For the reasons set forth below, we affirm the district court with respect to the appeals of Sonnie and Kevin Davis, and reverse on the sentencing issue in favor of the United States.

## II. FACTS AND PROCEDURE

In the Spring of 1987, Oakland Police Department narcotics officers began an investigation of Sonnie Davis. The investigation resulted in the issuance of a search warrant, authorizing the search of Sonnie Davis' person and the person and home of Marilyn Morrison for heroin, paraphernalia used in the distribution of heroin, items that might show control of the premises, and other records or notebooks showing the sales of heroin. On March 30, 1988, before executing the warrant, the police went to the residence of Avis Andrews to follow up on a tip concerning possible drug activity. Upon arriving, they observed Sonnie Davis' blue Mercedes–Benz parked nearby. Later that morning, the police went to Morrison's home to execute the search warrant.

At a store near Morrison's house they located and searched Sonnie Davis. The search produced keys (later determined to open Andrews' apartment), a wallet with $1800 cash, and what appeared to the police to be a lock combination scribbled on a piece of paper. A search of Morrison's house yielded over 281 grams of heroin, narcotics distribution paraphernalia, and evidence establishing that the residence be-

longed to Morrison. The police arrested Morrison and Sonnie Davis.

That same afternoon, the police returned to Andrews' apartment where they had previously observed Sonnie's car. Andrews was on probation and subject to a search condition permitting the warrantless search of her apartment. A search of the home uncovered heroin, rock cocaine and drug paraphernalia in plain view. After a general search of the apartment, the police opened a safe in a closet of the master bedroom using the combination seized from Sonnie Davis. The safe contained in excess of 100 grams of heroin.

After his arrest, Sonnie Davis decided to have Morrison killed to prevent her from testifying against him. While in custody, he contacted his nephew, Kevin Davis, to arrange the killing. On April 20, Kevin Davis drove to Morrison's house with James Walker, one of Sonnie's main heroin distributors, who testified that "Kevin was going to shoot the woman that night." Kevin Davis did not kill Morrison that night because she had company. Four days later, Kevin Davis returned with Walker to Morrison's house where he shot Morrison four times at point blank range. Morrison survived the attack.

On June 22, 1988, Sonnie and Kevin Davis were indicted in a four-count indictment with three other persons. Count One charged Sonnie Davis, Avis Andrews, Marilyn Morrison, and other persons unknown, with conspiracy to possess heroin with intent to distribute. 21 U.S.C. § 846. Counts Two and Three charged Sonnie Davis, Andrews, and Morrison with possessing heroin with intent to distribute. 21 U.S.C. § 841(a)(1). Count Four charged Sonnie Davis, Kevin Davis, and Walker with knowingly attempting to kill Morrison with the intent to prevent the communication to any law enforcement officer information relating to the narcotics offenses. 18 U.S.C. § 1512(a).

Prior to trial, Kevin Davis moved unsuccessfully to sever his trial from Sonnie Davis'. He did not renew the motion to sever during trial or at the close of evidence. The jury trial began on February 23, 1989. On six separate occasions during

the course of the trial, Kevin Davis moved for mistrial based on prosecutorial misconduct. The district court denied the motions for mistrial. On March 10, 1989, after seven days of testimony, the jury convicted Sonnie and Kevin Davis on all counts.

After the trial, Kevin Davis moved for a new trial or judgment of acquittal, challenging the sufficiency of the evidence. Kevin Davis also moved to join Sonnie Davis' post-trial motion to dismiss the indictment on the ground that the government failed to properly designate the Special Assistant to the United States Attorney who obtained the indictment from the grand jury. The district court denied these motions.

During the sentencing hearings, the district court ruled that one of Kevin Davis' prior convictions did not fall under the "career offender" provisions of the Sentencing Guidelines. Consequently, rather than sentence him to 210 months, the applicable sentence if "career offender" guideline applied, the district court sentenced him to 120 months. The government timely appealed Kevin Davis' sentence on September 15, 1989.

### III. SUPPRESSION OF HEROIN FOUND IN SAFE

#### A. *Standard of Review*

Sonnie Davis argues the heroin seized from the safe at Andrews' apartment impermissibly exceeded the scope of Andrews' probation search condition. We must first determine whether Sonnie Davis has standing to assert a violation of the fourth amendment. We review "the question of whether a defendant has standing to assert a Fourth Amendment claim de novo, although we review the underlying facts for clear error." *United States v. Iglesias*, 881 F.2d 1519, 1522 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990) (citations omitted). This circuit has not addressed the standard

for reviewing a question involving the scope of a probation search. The question of whether the officers could reasonably have suspected the safe was within the custody or control of Andrews' and within the scope of her probation search condition involves a mixed question of fact and law; we review it de novo. *Cf. United States v. Flippin*, 924 F.2d 163, 164–65 (9th Cir. 1991) (whether a search was based on sufficient suspicion is mixed question of law and fact); *United States v. McLaughlin*, 851 F.2d 283, 286 (9th Cir.1988) (whether police exceed scope of a warrant reviewed de novo). *But cf. United States v. Rubio*, 727 F.2d 786, 797 (9th Cir.1983) (whether the scope of consent has been exceeded is a factual question reviewed for clear error); *United States v. Guzman*, 852 F.2d 1117, 1121 (9th Cir.1988) (unclear if question of authority to consent to a search is reviewed for clear error or de novo).

#### B. *Standing*

The government contests the district court's finding that Sonnie Davis had a legitimate expectation of privacy in the place searched.[2] To contest the legality of a search under the fourth amendment, the defendant must demonstrate a legitimate expectation of privacy in the place or item searched by showing an actual subjective expectation of privacy which society is prepared to recognize. *Minnesota v. Olson*, 495 U.S. ——, 110 S.Ct. 1684, 1687, 109 L.Ed.2d 85 (1990); *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Rakas v. Illinois*, 439 U.S. 128, 143 & n. 12, 99 S.Ct. 421, 430 & n. 12, 58 L.Ed.2d 387 (1978). The defendant has the burden of establishing, under the totality of the circumstances, the search or seizure violated his legitimate expectation of privacy in a particular place. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980).

The Supreme Court has held an overnight guest has a reasonable expectation of privacy in a friend's residence even though he has no legal interest in the premises and

**2.** In addition, the district court concluded that under the rule of *United States v. Issacs*, 708 F.2d 1365 (9th Cir.), *cert. denied*, 464 U.S. 852, 104 S.Ct. 165, 78 L.Ed.2d 150 (1983), the government was estopped from arguing that defendant

was the culpable possessor of incriminating evidence, while denying that there was any expectation of privacy. We do not reach this issue because we affirm on standing grounds.

does not have legal authority to determine who may enter the household. *Olson*, 495 U.S. ——, 110 S.Ct. at 1688–89; *see also United States v. Robertson*, 606 F.2d 853, 858 n. 2 (9th Cir.1979) (overnight guest had standing to assert fourth amendment violation in search of his possessions). This court has held that a defendant who moved a laboratory to his friend's house to avoid detection and who used that site to manufacture drugs had a legitimate expectation of privacy. *United States v. Pollock*, 726 F.2d 1456, 1465 (9th Cir.1984). A defendant who was an alleged co-owner of a storage unit and had allegedly paid a portion of the rental payments even though defendant's name did not appear on the rental agreement was held to have had a legitimate expectation of privacy in the place searched. *United States v. Johns*, 851 F.2d 1131, 1135–36 (9th Cir.1988). Finally, in *United States v. Harwood*, 470 F.2d 322 (10th Cir.1972), the court held that a defendant who stored containers in the attic of a friend's garage with the latter's permission to "come and go" to check the property had standing to challenge a search. *Id.* at 325; *see also* W. Lafave, *Search and Seizure* § 11.3(c) at 303 (1987).

█ Sonnie Davis had a legitimate expectation of privacy in the place searched.

He had a key to Andrews' apartment, and was free to come and go as he pleased. He stored things there, and took the precaution of storing items in a locked safe to assure privacy. Moreover, he had previously lived in the apartment, and had independent access to the place searched. It is also significant that Sonnie Davis paid at least a portion of the rent for Andrews' apartment. Having assumed an ongoing obligation to pay the rent, Sonnie Davis exercised partial or joint control over the premises. *See Johns*, 851 F.2d at 1136. Joint control "remains significant under the expectation of privacy standard." *United States v. Quinn*, 751 F.2d 980, 981 (9th Cir.1984), *cert. granted*, 474 U.S. 900, 106 S.Ct. 224, 88 L.Ed.2d 224 (1985), *cert. dismissed*, 475 U.S. 791, 106 S.Ct. 1623, 89 L.Ed.2d 803 (1986). Viewing the totality of the circumstances, we hold the district court correctly found that Sonnie Davis had a sufficient connection to the invaded place to assert the protection of the fourth amendment.[3]

### C. Validity of Probation Search

The district court concluded that the search of the safe was a reasonable exten-

**3.** The United States urges us to interpret *Minnesota v. Olson* as limiting standing in this context to overnight guests. Such an interpretation would be at odds with the great body of Supreme Court precedent as well as cases in this and other circuits. *See, e.g., Rakas*, 439 U.S. at 142, 99 S.Ct. at 430 ("We think that *Jones* [*v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ] on its facts merely stands for the unremarkable proposition that a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place."). The language of *Olson* forecloses the United States' interpretation in any event: "We need go no further than to conclude, as we do, that Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to ... recognize...." *Olson*, 495 U.S. at ——, 110 S.Ct. at 1688.

The United States' reliance on *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), and *United States v. Kovac*, 795 F.2d 1509 (9th Cir.1986), *cert. denied*, 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 1000 (1987), is unpersuasive. *Rawlings* dealt with a defendant who dumped drugs in the purse of a third party to avoid detection by the police. *Rawlings*, 448 U.S. at 101, 100 S.Ct. at 2559. Unlike the parties in *Rawlings*, Sonnie Davis and Andrews had a long standing relationship. Sonnie Davis maintained continuous access to the house and the safe, stored possessions in the safe found in Andrews' bedroom, and placed the contraband in the safe to assure privacy.

*Kovac* involved the search of an automobile which defendant did not own or use regularly, and which was not readily available to him. *Kovac*, 795 F.2d at 1510–11. The court held "[defendant] did not have a significant connection with [the] car by which he had either an inherent or actual right to control its use and exclude others...." *Id.* at 1511. *Kovac* is distinguishable from this case. Sonnie Davis had continuous access to Andrews' apartment, and, by locking the safe, asserted the right to exclude others from the safe's contents. He possessed keys to the apartment, paid the rent, and placed the safe there. Moreover, the police observed his car in front of Andrews' apartment on the morning of the arrest. These facts suggest Sonnie Davis had a "significant connection" with the apartment. Moreover, the privacy interests associated with the home have historically been accorded greater significance than those associated with an automobile.

sion of Andrews' search condition, and was therefore lawful. It applied both California and federal standards governing probation searches. *See United States v. Solomon,* 528 F.2d 88, 90 (9th Cir.1975) (admissibility of evidence obtained by state law enforcement officer depends on legality of actions measured by both state and federal standards); *United States v. Lovenguth,* 514 F.2d 96, 98 (9th Cir.1975) (per curiam); *United States v. Fisch,* 474 F.2d 1071, 1075 (9th Cir.), *cert. denied,* 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973).

▪ While the federal courts may consider state precedent for its persuasive value, the validity of a search conducted by state law enforcement officers is ultimately a question of federal law. *See United States v. George,* 883 F.2d 1407, 1412 (9th Cir.1989) (citing *United States v. Chavez–Vernaza,* 844 F.2d 1368, 1372–74 (9th Cir. 1987) (evidence seized by state officers in compliance with federal law admissible without regard to state law)). For cases arising in California, the application of state standards would in any event prove redundant because the California State Constitution no longer affords independent state grounds for excluding relevant evidence. *In Re Lance W.,* 37 Cal.3d 873, 888–90, 210 Cal.Rptr. 631, 694 P.2d 744 (1985) (Constitutional amendment stating "relevant evidence shall not be excluded in any criminal proceeding" requires exclusion of relevant evidence only if federal constitution forbids its use).

▪ Under limited circumstances, law enforcement officers may search a probationer's home without obtaining a warrant and without probable cause. *See Griffin v. Wisconsin,* 483 U.S. 868, 872–73, 107 S.Ct. 3164, 3167–68, 97 L.Ed.2d 709 (1987) (upholding state regulation permitting probation search on reasonable suspicion); *United States v. Duff,* 831 F.2d 176, 179 (9th Cir.1987); *United States v. Johnson,* 722 F.2d 525, 527 (9th Cir.1983); *People v. Burgener,* 41 Cal.3d 505, 528–36, 224 Cal.Rptr. 112, 714 P.2d 1251 (1986) (parole search).

The permissible bounds of a probation search are governed by a reasonable suspicion standard. *See United States v. Giannetta,* 909 F.2d 571, 577 (1st Cir.1990) (a search of the premises by a probation officer extends to the entire area of the premises and any container may be searched pursuant to probation search condition if reason to believe container could contain object of search); *cf. Duff,* 831 F.2d at 179; *Toomey v. Bunnell,* 898 F.2d 741, 744 (9th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 390, 112 L.Ed.2d 400 (1990) (parole searches may be conducted without a warrant under a reasonableness standard).

▪ We recognize that California cases draw a distinction between probationers and parolees in evaluating the permissible scope of a search. *See People v. Bravo,* 43 Cal.3d 600, 608–09, 238 Cal.Rptr. 282, 738 P.2d 336 (1987), *cert. denied,* 485 U.S. 904, 108 S.Ct. 1074, 99 L.Ed.2d 234 (1988) ("[a] probationer, unlike a parolee, consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term" and thus the reasonable suspicion standard does not apply to parolee probation searches). We do not believe the distinction between the status of parolee and that of a probationer is constitutionally significant for purposes of evaluating the scope of a search. *Cf. Griffin,* 483 U.S. at 874, 107 S.Ct. at 3168 (both probationers and parolees have diminished liberty rights); *see generally* W. Lafave, *Search and Seizure,* § 10.10 (1987). We therefore conclude that police must have reasonable suspicion, that an item to be searched is owned, controlled, or possessed by probationer, in order for the item to fall within the permissible bounds of a probation search.

▪ Sonnie Davis contends the search, while initially justified as a valid probation search,[4] became improper when the police

---

4. Appellant does not raise the question of whether police officers may conduct a probation search without authorization by a probation officer. *See United States v. Richardson,* 849 F.2d 439, 442 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988)

(upholding a search instigated and conducted solely by police but authorized by probation officer, leaving open the possibility that a complete delegation of authority may be evidence of a subterfuge for criminal investigation). We therefore do not consider it either.

exceeded the scope of the probationer's search condition by searching the safe.[5] The police opened the safe with a lock combination seized from Sonnie Davis earlier in the day. Therefore, appellant argues, the police could not reasonably suspect the safe was owned, possessed, or controlled by the probationer.[6] As a result, appellant argues, the search of the safe was not within the scope of Andrews' probation search condition and cannot be upheld as a valid warrantless search.

This argument overstates the significance of Sonnie Davis' access to the safe. Although Sonnie Davis possessed keys to Andrews' apartment and a combination to the safe, reasonable suspicion existed to believe the probationer shared ownership, possession, or control over the safe. The police spotted Sonnie Davis' car in front of probationer's apartment the day of Sonnie Davis' arrest. They had received a tip that drug activity was occurring on the premises. Once inside the house, but prior to opening the safe, the police found contraband and paraphernalia in common areas of the apartment. The discovery of evidence of wrongdoing bolstered the officers' suspicion that the probationer was involved in a drug conspiracy with Sonnie Davis. *See Giannetta*, 909 F.2d at 577 (upon discovering incriminating material, probation officer "was justified in expanding the scope of the his probation search" to look for related matters). Furthermore, the safe was located in Andrews' bedroom—increasing the likelihood she exercised control over the safe. Under these circumstances the police could have reasonably suspected the safe was jointly owned, possessed, or controlled by Sonnie Davis and probationer, and thus subject to search under the rubric of Andrews' probation search condition.

Sonnie Davis also argues that where there is a question of ownership of an item to be searched, law enforcement officers conducting a probation search must make a reasonable good faith effort to ascertain ownership in order to protect the privacy interests of both the owner and probationer in whose residence the item is located.

■ To date, no federal court has examined the issue of whether law enforcement officers conducting a probation search have a duty to inquire into the ownership, possession, or control of an item sought to be searched. California law is inconsistent on this issue. One line of cases imposes a duty to inquire when there is at best a fifty percent chance that the item sought to be searched belongs to the probationer or parolee. *See People v. Montoya*, 114 Cal. App.3d 556, 562, 170 Cal.Rptr. 624 (1981) (police had duty to inquire prior to searching a pair of pants found in the parolee's house in which another person, not subject to the parole search condition, was present); *People v. Tidalgo*, 123 Cal. App.3d 301, 306, 176 Cal.Rptr. 463 (1981) ("[W]here police officers do not know who owns or possesses a residence or item and such information can be easily ascertained, it is incumbent upon them to attempt to ascertain ownership...."); *People v. Full-*

---

5. Sonnie Davis argues his arrest was unlawful and somehow taints the subsequent search of the probationer's apartment. While it is true the police opened the safe using the combination found on Sonnie's person, it is not true, as appellant argues, that the combination was illegally seized and retained after an illegal arrest. The combination was properly seized and retained pursuant to a valid search warrant authorizing the search of Sonnie for records relating to drug activity. The police had authority to detain Sonnie Davis briefly for the purpose of executing the search warrant. Any illegality in the arrest of Sonnie Davis which may have arisen after the valid search of Sonnie Davis and seizure of the combination would not taint the search of the safe at Andrews' apartment.

6. Sonnie Davis further argues the probationer disclaimed ownership of the safe at the time the police conducted the search of her apartment. However, the record does not support this contention. Sonnie Davis' initial suppression motion contained the same assertion. In that instance, Sonnie Davis attempted to support the assertion by reference to a statement given by Andrews at the time of her arrest. While that statement indicates Andrews disclaimed ownership of the safe, it does not suggest that she communicated this fact to the police at the time of the search as appellant contends. Under the circumstances, even if Andrews had strenuously denied ownership of the safe at the time of the search, the police still could have reasonably suspected the safe was within her custody or control.

er, 148 Cal.App.3d 257, 263, 210 Cal.Rptr. 1 (1983) (citing *Tidalgo*, 123 Cal.App.3d at 306–07, 176 Cal.Rptr. 463); *People v. Cruz*, 61 Cal.2d 861, 867, 40 Cal.Rptr. 841, 395 P.2d 889 (1964) (where suitcases could have belonged to someone other than consenter, officer had duty to ask whether suitcase belonged to the person who had given consent to search).

The most recent decision, *People v. Boyd*, 224 Cal.App.3d 736, 274 Cal.Rptr. 100 (1990), follows a line of cases which reject *Montoya*'s duty to inquire rule. *See People v. Palmquist*, 123 Cal.App.3d 1, 12–13, 176 Cal.Rptr. 173 (1981) (police did not need to inquire into possession, ownership or control prior to searching refrigerator and ski parka in the home of a probationer who lived with a non-probationer); *People v. Britton*, 156 Cal.App.3d 689, 701, 202 Cal.Rptr. 882 (1984) (search of paper bag in closet of apartment shared by parolee and nonparolee upheld where nonparolee was not present to question about the bag). In *Boyd*, a parole search by the police uncovered contraband in a handbag which belonged to a nonparolee. The nonparolee asserted the police's failure to inquire into the custody or control of the handbag required suppression of the evidence seized. The *Boyd* court rejected

> any suggestion that a parole search will automatically be invalidated simply because the officer fails to ask the nonparolee roommate whether the object about to be searched is his or her property. Such a rigid rule would unnecessarily bind the officer to the answer given, regardless of its veracity. The officer should not be bound by the reply in the face of overwhelming evidence of its falsity. Even if the nonparolee roommate's claim of ownership sounds reasonable, reasonable suspicion may be predicated on the parolee's possession or control of the object.

*Boyd*, 224 Cal.App.3d at 749, 274 Cal.Rptr. 100. We interpret *Boyd* as holding that the police should inquire into the ownership, possession, or control of an item sought to be searched when the totality of the circumstances do not otherwise give rise to reasonable suspicion that the item to be searched belongs to, or is under control of, the parolee. *Id.* at 750–51, 274 Cal. Rptr. 100.

The *Boyd* decision, rejecting a duty to inquire rule, is the better view. Requiring the police to inquire into ownership, possession or control in all instances when ownership, custody, or control is not obviously and undeniably apparent, would force courts to undertake the difficult task of evaluating, in every case of doubt, the nature of the measures taken and the credibility of the responses given. Moreover, such a rule does not satisfactorily accommodate the situation here, where the nonprobationer is not present to affirm or deny ownership. As the court noted in *Britton*, "[m]ost importantly there was someone in the house [in *Montoya*] other than the parolee whom the officers could question about the ownership of the items searched." *Britton*, 156 Cal.App.3d at 701, 202 Cal.Rptr. 882. We do not believe law enforcement officers should in all circumstances be bound by the responses of persons with the greatest incentive to lie about ownership, possession, or control. *See Boyd*, 224 Cal.App.3d at 749, 274 Cal.Rptr. 100 ("Such a rigid rule would unnecessarily bind the officer to the answer given, regardless of its veracity."); *Britton*, 156 Cal.App.3d at 701, 202 Cal.Rptr. 882 ("An officer could hardly expect that a parolee would claim ownership of an item which he knew contained contraband."). Reasonable suspicion that an item is owned, possessed, or controlled by the probationer may exist even in circumstances when the item to be searched is not obviously and undeniably owned, possessed, or controlled by the probationer. While in some circumstances, questions of ownership, possession, or control may rise to a level requiring law enforcement officers to inquire into ownership, possession, or control in order to develop the reasonable suspicion necessary to justify the search of the item, we do not discuss that scenario because, for the reasons set forth above, the police had reasonable suspicion to believe the safe was within Andrews' ownership, possession, or control.

## IV. SUFFICIENCY OF THE EVIDENCE

### A. *Standard of Review*

"In reviewing the sufficiency of the evidence, we determine whether any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. The test is whether the evidence and all reasonable inferences which may be drawn from it, when viewed in the light most favorable to the government, sustain the verdict." *United States v. Terry*, 911 F.2d 272, 278 (9th Cir.1990) (quoting *United States v. Soto*, 779 F.2d 558, 560 (9th Cir.), *amended*, 793 F.2d 217 (9th Cir.1986), *cert. denied*, 484 U.S. 833, 108 S.Ct. 110, 98 L.Ed.2d 70 (1987)).

### B. *Federal Nature of Offense*

■ Kevin Davis was charged with obstructing or attempting to obstruct an official proceeding by shooting a known witness, in violation of 18 U.S.C. § 1512(a). He argues there was insufficient evidence to establish his awareness of the federal nature of the proceeding with which he interfered. The district court denied appellant's motion for a new trial and judgment of acquittal, holding: "The evidence, considering all the inferences that can fairly be drawn from it, amply supports the finding that defendant shot Marilyn Morrison with the intent of preventing the communication to law enforcement officers of information concerning the commission of federal offenses." *United States v. Davis*, 728 F.Supp. 1437, 1441–42 (N.D.Cal.1989).

Section 1512(f) of title 18 of the United States Code provides in relevant part:

In a prosecution for an offense under this section, no state of mind need be proved with respect to the circumstance—

(1) that the official proceeding before a judge, court, magistrate, grand jury, or government agency is before a judge or court of the United States, a United States magistrate, a bankruptcy judge, a Federal grand jury, or a Federal Government agency;....

18 U.S.C. § 1512(f). Under § 1512, the United States was not required to prove the defendant knew he was tampering with a federal proceeding. *United States v. Scaife*, 749 F.2d 338, 348 (6th Cir.1984); *see also United States v. Ardito*, 782 F.2d 358, 360–61 (2d Cir.), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 338 *cert. denied*, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986) (finding no scienter requirement that defendants know they were obstructing a federal proceeding). *Cf. United States v. Brice*, 926 F.2d 925, 929 (9th Cir.1991). Consequently, appellant's challenge to the sufficiency of the evidence is without merit.

## V. MISTRIAL

### A. *Standard of Review*

We review the decision of the district court to deny a mistrial motion for abuse of discretion. *United States v. Chan Yu–Chong*, 920 F.2d 594, 599 (9th Cir.1990); *United States v. Marsh*, 894 F.2d 1035, 1040 (9th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1143, 107 L.Ed.2d 1048 (1990).

### B. *Discussion*

■ Kevin Davis asserts the district court abused its discretion by denying his motions for mistrial based on prosecutorial misconduct on six separate occasions. Ordinarily cautionary instructions are sufficient to cure the effects of improper comments. *United States v. Charmley*, 764 F.2d 675, 677 (9th Cir.1985); *Marsh*, 894 F.2d at 1040. Even where no curative instruction is given, or the instruction is insufficient to cure the prejudicial impact of the impropriety, the court should "not reverse a defendant's conviction if substantial, independent and credible evidence of the defendant's guilt overwhelms whatever incriminating aspects inadmissible statements may have had in isolation." *Marsh*, 894 F.2d at 1040. "Declaring a mistrial is appropriate only where a cautionary instruction is unlikely to cure the prejudicial effect of an error." *United States v. Charmley*, 764 F.2d at 677 (citing *United States v. Gann*, 732 F.2d 714, 725 (9th

Cir.), *cert. denied*, 469 U.S. 1034, 105 S.Ct. 505, 83 L.Ed.2d 397 (1984)).

■ In four of the six instances where a motion for mistrial was made, a witness had either exceeded the scope of a question or begun to encroach on inadmissible subjects. Only two of the motions arose directly from conduct by the prosecution. On both occasions Kevin Davis contends the questions were asked in attempt to improperly tie him to Sonnie Davis' drug activities. In all six instances, the district court sustained a valid objection, struck objectionable testimony, admonished the witness, and/or gave a strong cautionary instruction.

Even had these measures been insufficient, the independent evidence of guilt overwhelmed the impact of the error. James Walker, a participant in the attack, testified that he saw Kevin Davis go to Morrison's house with a gun and that he heard four shots. Kevin Davis came back to the car and according to Walker said "come on let's go" and the two then proceeded to dispose of the gun. Marilyn Morrison, the victim, testified that Kevin Davis came to her door said, "This is from Sonnie," and shot her four times at point blank range. Given the strength of the evidence against Kevin Davis and the measures taken by the district court to cure any prejudice caused by improper questions and testimony, we do not believe the district court abused its discretion in denying appellant's motions for mistrial.

## VI. SEVERANCE

### A. *Standard of Review*

We review the district court's decision to deny a motion to sever for abuse of discretion. *Marsh*, 894 F.2d at 1040; *United States v. Castro*, 887 F.2d 988, 996 (9th Cir.1989).

### B. *Discussion*

■ Kevin Davis contends the district court abused its discretion when it denied his pre-trial motion to sever his trial from that of Sonnie Davis. "In order to preserve a [severance] motion on appeal, the motion must be renewed at the close of evidence." *United States v. Sanchez–Lopez*, 879 F.2d 541, 551 (9th Cir.1989). "Failure to do so generally waives appellate review." *United States v. Plache*, 913 F.2d 1375, 1378 (9th Cir.1990); *see also United States v. Urrutia*, 897 F.2d 430, 433 (9th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2190, 109 L.Ed.2d 517 (1990) ("When a defendant fails to renew a motion for severance at the close of the evidence the issue is waived."); *United States v. Smith*, 893 F.2d 1573, 1581 (9th Cir.1990) (appellant "waived his severance motion by not renewing it at the close of the evidence."). A severance issue will be preserved for appeal, however, absent a post-evidence renewal, where a new "motion accompanies the introduction of evidence deemed prejudicial and a renewal at the close of all evidence would constitute an unnecessary formality."[7] *United States v. Free*, 841 F.2d 321, 324 (9th Cir.), *cert. denied*, 486 U.S. 1046, 108 S.Ct. 2042, 100 L.Ed.2d 626 (1988) (quoting *United States v. Kaplan*, 554 F.2d 958, 965 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977)). Kevin Davis acknowledges he failed to renew the severance issue at the close of evidence. Moreover, appellant failed to renew the motion at any time during trial. Renewal of the motion to sever was necessary in this instance because the district court did not indicate that a renewal would be fruitless. *See United States v. Kaplan*, 554 F.2d at 966 (the district court, before the close of evidence, indicated that a renewal would be useless). For these reasons, we hold that Kevin Davis' failure to renew the denial of his severance motion resulted in the waiver of his right to appeal.

---

**7.** It is not clear whether *Kaplan* espouses one exception or two. *Compare United States v. Plache*, 913 F.2d at 1379 (court views *Kaplan* as creating two separate exceptions) *with United States v. Free*, 841 F.2d 321 at 324 (9th Cir.1988) (court views *Kaplan* as one two-part exception). We do not need to resolve this question because appellant failed to satisfy either prong of the *Kaplan* test.

## VII. IMPROPER DELEGATION/APPOINTMENT OF SPECIAL PROSECUTOR

### A. Standard of Review

We review de novo the district court's refusal to dismiss the indictment for prosecutorial misconduct. *United States v. Plesinski*, 912 F.2d 1033, 1035 (9th Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991). "The district court's refusal to disqualify the prosecutor is reviewed for abuse of discretion." *Id.*

### B. Discussion

■ Kevin Davis argues that a procedural defect in the appointment of the Special Assistant United States Attorney who appeared before the grand jury and subsequently tried the case invalidates his conviction. The circumstances underlying the appointment of the special assistant are set forth in the district court's opinion. *Davis*, 728 F.Supp. at 1438–40. Essentially, the special assistant, a Deputy District Attorney for the County of Alameda, was appointed as a Special Assistant United States Attorney by a letter signed by the Deputy Director of the Office of Attorney Personnel Management of the Department of Justice on June 22, 1988, the date on which he appeared before the grand jury. The alleged defect lies in the fact that there was no written delegation of that function from the Deputy Attorney General to the Office of Attorney Personnel Management at the time of the appointment.

The alleged defect was at most a procedural irregularity, which did not deprive the district court of jurisdiction. Moreover, the defendants were not prejudiced by the absence of a written delegation. The indictment was drafted by a regular Assistant United States Attorney, approved by his supervisors in accordance with the procedure in the United States Attorney's Office, and signed by the Acting United States Attorney. On the only date that testimony was presented to the grand jury, June 22, 1988, the regular Assistant U.S. Attorney who prepared the indictment was present in the grand jury room for the entire presentation of testimony. After the indictment was returned, the regular assistant continued to provide guidance and assistance to the Special Assistant U.S. Attorney.

This court recently rejected a similar argument in *Plesinski*, 912 F.2d at 1038–39. Appellant seeks to distinguish *Plesinski* upon the ground that the prosecutor in that case ultimately took a new oath after the appointment was discovered to be defective. In the instant case, the defect was subsequently cured before trial, on February 10, 1989, when the Deputy Attorney General issued a written order validating all appointments nunc pro tunc. The manner in which the defect is cured is of no consequence so long as the defect itself did not prejudice the appellant. *See Plesinski*, 912 F.2d at 1038 (quoting *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988) ("a District Court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants.")

Accordingly, we hold that the district court did not err in denying appellant's motion to dismiss.

## VIII. CAREER OFFENDER PROVISION

### A. Standard of Review

"The district court's determination of whether a given prior conviction falls within the scope of the Sentencing Guidelines is reviewed de novo." *United States v. Gross*, 897 F.2d 414, 416 (9th Cir.1990); *see also United States v. Newman*, 912 F.2d 1119, 1123 (9th Cir.1990). We review for clear error the factual matters relating to the prior conviction. *Gross*, 897 F.2d at 416.

### B. Discussion

Section 4B1.1 of the Sentencing Guidelines provides in relevant part:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense....

Section 4B1.2(2) provides:

The term "controlled substance offense" means an offense under a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance (or counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, or distribute.

§§ 4B1.1 & 4B1.2(2). The only issue on appeal is whether Kevin Davis' second pri-

or conviction falls within the career offender guidelines.

Prior to sentencing, the United States filed a copy of the transcript of Kevin Davis' 1987 guilty plea for violation of Section 11351 of the California Health and Safety Code. Section 11351 provides for a sentence of up to four years imprisonment for possession of a controlled substance for sale. The transcript of the sentencing hearing indicates that Kevin Davis' counsel conceded the prior conviction was not for simple possession.[8] Nevertheless, the district court, relying on apparently erroneous information in the probation report, found the prior offense was for simple possession and consequently did not sentence Kevin Davis as a career offender. Although the probation report is ambiguous, the transcript of Kevin Davis' § 11351 plea hearing and the admissions of his lawyer make it clear that the prior conviction was not for simple possession, but rather was for possession with intent to sell.

■ Kevin Davis suggests the district court knew of the government's position with respect to the prior felony but ruled that even if the prior conviction was for possession for sale the guideline still would not apply because in the prior conviction he was sentenced for a misdemeanor. Even if this were a basis for the district court's failure to sentence under the career offender guidelines, it would still constitute reversible error. The application note to § 4B1.2, note three, states:

"Prior felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and *regardless of the actual sentence imposed.*

Sentencing Guidelines § 4B1.2 (emphasis added). Although we are not bound to follow the application notes, *United States v. Gross,* 897 F.2d at 416–17, the notes do have the force of legislative history. *United States v. Watt,* 910 F.2d 587, 591 (9th Cir.1990).

■ A violation of section 11351 of the California Health and Safety Code is punishable by imprisonment for a term exceed-

ing one year. Under the application note, therefore, the conviction was a "prior felony conviction." The application note is consistent with the well established federal rule that a felony is an offense *punishable* by a maximum term of imprisonment of more than one year, regardless of the sentence actually imposed. *See* 18 U.S.C. § 3156(a)(3) and former 18 U.S.C. § 1. It is also in harmony with the intent of Congress that repeat drug offenders "receive a sentence of imprisonment under the guidelines that is at or near the maximum term that is authorized by statute." *United States v. Sanchez–Lopez,* 879 F.2d 541, 559 (9th Cir.1989). We accordingly follow the application note and conclude that the district court committed clear error in failing to sentence Kevin Davis as career offender.

Kevin Davis' sentence must therefore be set aside and the case remanded to the district court with directions to impose a sentence consistent with this opinion.

## IX. CONCLUSION

While Sonnie Davis has standing to assert a fourth amendment violation arising out of the search of the safe in Avis Andrews' apartment, the search was a valid probation search which did not exceed the scope of Andrews' search condition. The police had reasonable suspicion to believe the safe was jointly owned, possessed, or controlled by probationer.

Kevin Davis' challenges to his conviction are without merit. The statute he was convicted of violating does not, as appellant contends, require the government to prove he had knowledge of the federal aspect of the crime. The district court did not abuse its discretion in denying Kevin Davis' motions for mistrial. Kevin Davis' failure to renew his severance argument at any time during trial or at the close of evidence constituted a waiver of the issue on appeal. The defective appointment of the Special Assistant United States Attorney does not afford a basis for dismissing the indictment. Finally, the district court clearly erred in failing to sentence Kevin Davis as a career offender.

AFFIRMED in part; REVERSED in part, REMANDED.

---

8. At the sentencing hearing, Kevin Davis' attorney stated:

I have seen the transcript of the narcotic possession case that has been in dispute, and I have no reason to believe that is not an accurate recollection—that is not an accurate re-

cording of that proceeding. It does appear that my client is of the belief that he was—that he had been convicted of simple possession only, however, that is at variance with the record.