985 F.2d 576
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Zoltan SZTOJKO, Defendant-Appellant.
 No. 92-10217.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 13, 1993.
Decided Jan. 28, 1993.
 
 Appeal from the United States District Court for the District of Nevada (Las Vegas); No. CR-91-00126-LDG, Lloyd D. George, District Judge, Presiding.
 D.Nev.
 AFFIRMED.
 Before CHOY, SCHROEDER and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Sztojko appeals from his conviction for conspiracy to distribute a controlled substance and distribution of a controlled substance. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.
 
 
 3
 The government's evidence at trial showed that Sztojko and his co-conspirator Lorand Bodolay were involved in a sale of cocaine to an FBI undercover agent, Robert Bennett. The testimony of Bennett and a government informant named Hajek detailed Sztojko's extensive involvement in negotiating and executing the cocaine transaction. Sztojko was convicted after a three-day jury trial.
 
 A. Sufficiency of the Evidence
 
 4
 Contrary to Sztojko's arguments, we find that the evidence was sufficient to support his conviction. Evidence is sufficient if "any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt." United States v. Terry, 911 F.2d 272, 278 (9th Cir.1990) (quoting United States v. Soto, 779 F.2d 558, 560 (9th Cir.), amended, 793 F.2d 217 (9th Cir.1986), cert. denied, 484 U.S. 833 (1987)). A rational jury could have found beyond a reasonable doubt that Sztojko intentionally distributed a controlled substance. The evidence presented by the government showed that Sztojko initiated a drug deal, negotiated its terms, received a large sum of cash and directed the FBI agent to a large quantity of cocaine. Evidence was also presented that Sztojko and Bodolay were acting together, from which the jury could have inferred the existence of a conspiracy.
 
 
 5
 The defendant argues that the government failed to negate his entrapment defense by proving beyond a reasonable doubt that he was predisposed to distribute cocaine. See Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992). At trial, Sztojko testified that it was Hajek who initially suggested the drug deal, and that Sztojko was reluctant but was eventually persuaded to help Hajek arrange the deal. In this appeal, the defendant contends that the only evidence tending to counter the defendant's testimony was evidence pertaining to meetings and phone calls with the defendant after Sztojko had already been induced by Hajek to participate. However, Sztojko's own testimony reveals that he and Hajek first discussed the subject of drugs at a meeting where Bennett was also present. Therefore, the testimony of both Bennett and Hajek that Sztojko initiated the discussion of cocaine at that meeting is evidence of the defendant's predisposition prior to any government inducement. The evidence viewed in the light most favorable to the government is sufficient to sustain the conviction.[1]
 
 
 6
 B. Refusal to Instruct on Defendant's Theory
 
 
 7
 The defendant also argues that reversal is required because the district court refused to instruct on the defendant's theory of defense by rejecting a requested jury instruction. This claim is without merit because the rejected instruction was not supported by law. See United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990).
 
 
 8
 The defendant's proposed instruction stated in part: "If the defendant was acting as the agent of the buyer and the defendant was not acting on his own behalf, then he did not commit the offense of which he is charged." This instruction is not supported by law and was properly rejected. Title 21 U.S.C. § 841(a) does not distinguish between agents and principals, and 18 U.S.C. § 2 specifically imposes liability for aiding and abetting. Furthermore, in United States v. Wright, 593 F.2d 105, 108 (9th Cir.1979), this court held that a defendant was not entitled to a similar instruction because § 841 was intended to encompass individuals who acquired drugs on behalf of others.
 
 C. Denial of Mistrial Motion
 
 9
 We also reject defendant's argument that the district court improperly denied his motion for mistrial after several instances of alleged prosecutorial misconduct.
 
 
 10
 A district court's denial of a motion for mistrial is reviewed for abuse of discretion. United States v. Davis, 932 F.2d 752, 761 (9th Cir.1991). An alleged error justifies a mistrial when the error " 'pervade[s] the trial with prejudice so as to constitute an unfair trial.' " United States v. Bustillo, 789 F.2d 1364, 1367 (9th Cir.1986) (quoting United States v. Nace, 561 F.2d 763, 769 (9th Cir.1977)). Where prosecutorial misconduct results in improper testimony, a court's cautionary instructions to disregard the testimony are generally sufficient to overcome the prejudicial effect. Davis, 932 F.2d at 761. Moreover, even if the cautionary instructions are insufficient, a conviction should not be reversed where "substantial, independent and credible evidence" of guilt overwhelms the prejudicial effect of the improper testimony. Id.
 
 
 11
 Defendant argues a mistrial should have been granted on the basis of several instances where the prosecutor elicited improper testimony. First, defendant argues that he was prejudiced by Bennett's repeated references to the FBI investigation of the defendant on charges of dealing in stolen property. The statements suggesting that the defendant was the subject of another investigation were cryptic and it is unlikely the jury would even have realized the defendant was suspected of dealing in stolen property. Moreover, any prejudicial effect was cured by the following instruction given by the court at the close of trial: "The defendant is not on trial for any conduct or offense not charged in the indictment. You should consider ... evidence about other acts of the defendant only as they relate to these charges against the defendant."
 
 
 12
 Second, defendant argues that Agent Bennett's testimony improperly suggested that the defendant was violent. Bennett made several references to his concern about the safety of the operation. However, he also explained that it was his policy to be careful when meeting any criminal suspect for the first time. In this context, Bennett's comments did not necessarily imply that Bennett thought Sztojko was violent. Furthermore, the district court gave cautionary instructions to the jury after several of these statements which may have cured any possible prejudicial effect.
 
 
 13
 Finally, even if the cautionary instructions were not sufficient to cure the effects of the improper testimony, there was sufficient credible and independent evidence of guilt to overcome any prejudicial effect. See Davis, 932 F.2d at 761. Thus the district court did not abuse its discretion in denying defendant's motions for mistrial.
 
 D. Reasonable Doubt Instruction
 
 14
 Lastly, Sztojko contends that the reasonable doubt instruction given by the court violated his due process rights because it impermissibly lessened the prosecution's burden of proof. In United States v. Velasquez, No. 91-10540, 1992 WL 354915, at * 3 (9th Cir. Dec. 4, 1992), this court reviewed the identical instruction and concluded it was an accurate statement of the law. Accordingly, the reasonable doubt instruction given in this case was proper.
 
 
 15
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Sztojko also argues that he was entrapped because his numerous contacts with Hajek prior to the meetings with Bennett created any predisposition he may have had. See Jacobson, 112 S.Ct. at 1541. However, since drugs were not discussed during Sztojko's early contacts with Hajek, government action could not have created his predisposition