**AMERICAN SAMOA GOVERNMENT, Plaintiff,**

v.

**MANAIA SIVA PEARSON, Defendant.**

High Court of American Samoa
Trial Division

CR No. 48-97

August 17, 1998

Before: KRUSE, Chief Justice, TAUANU`U, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Frederick J. O'Brien, Assistant Attorney General
For Defendant, Loretta Townsend, Assistant Public Defender

## ORDER DENYING MOTION FOR RECONSIDERATION

### Introduction

Following a shooting incident in Pago Pago implicating the defendant Manaia Siva Pearson ("Pearson"), the police seized an M1 Carbine Rifle obtained from the home of Mrs. Evalani Viena ("Viena"), Pearson's aunt. Pearson filed a number of motions to suppress, *inter alia*, the rifle. With regard to the rifle, Pearson argued that the police search was in violation of Article 1, Section 5, of the Revised Constitution of American Samoa (the Territory's counterpart to the Fourth Amendment of the United States Constitution).

We denied the motion, concluding that the evidence failed to show that police action had violated Pearson's constitutional rights. The evidence presented at the suppression hearing showed that:

> Pearson did not stay at [Evalani's] residence on any regular or consistent basis. [Evalani] had not known that Pearson had been on her premises, much less that he had slept there on the night in question. Instead . . . Pearson often stays at [Albert Pearson's] house, coming over there "whenever he likes." Moreover, since Pearson apparently dropped off the sweater and M1 Carbine in one of the rooms and then went to sleep in the lobby, Pearson himself acted as if he subjectively knew that he did not have permission to stay inside Viena's home.

*American Samoa Govt v. Pearson*, 2 A.S.R.3d 63, 68 (Trial Div. 1998). From the evidence the court concluded that:

> All of these facts, singularly or combined, cast great doubt that Pearson held a possessory interest in the room where the evidence was found. Furthermore, Pearson's decision to sleep in an area open to many people, including at a minimum the guests of the motel and their guests, further leads us to believe that Pearson did not have a subjective and reasonable "expectation of privacy" as required under *Katz* for his Fourth Amendment protections to attach.

*Id.* For Fourth Amendment protections to apply, Pearson must have

either a possessory interest or privacy right in the area searched. *Katz v. United States*, 389 U.S. 347, 351; *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Even though police may have violated Viena's constitutional rights, Pearson's rights were not trampled. *Alderman v. United States*, 394 U.S. 165, 174, holds that a Fourth Amendment right is a "personal right" which may not be vicariously asserted by another.[1]

### Discussion

 Pearson's newly propounded argument may have been "on point," even compelling had it been proven. If Pearson had a subjective expectation of privacy in the room searched at the residence of Evalani Viena ("Viena"), the onus was on him to forward his own cause. He did not. We agree with the government that the defendant cannot keep coming back with different arguments when one fails. The court is not, like a department store in which you spend as long as you want trying on different outfits. If one argument does not quite fit, simply come back through the revolving door to try another one. The rules of criminal procedure allow "one bite at the apple" except under certain, special circumstances. Such circumstances do not exist here.

 There is another flawed aspect to the Pearson's motion. Although styled as one for "reconsideration," the motion does not seek reconsideration. Rather, it seeks a *de novo* hearing to allow Pearson to furnish a whole new evidentiary picture to "rebut" findings of the court that are substantially based on the record. This is very evident with the proffered affidavits by Pearson and Viena.

A motion for new trial/reconsideration is designed to give the trial court the opportunity to correct any errors and make appropriate changes, if necessary, in order to obviate unnecessary appeals. *See e.g., American Samoa Govt v. Falefatu*, 17 A.S.R.2d 114 (Trial Div. 1990); *Judicial Memorandum No. 2-87*, 4 A.S.R.2d 172 (1987). Pearson's motion, however, seeks to go beyond the bounds of a motion for a new trial/reconsideration, essentially seeking, with the benefit of hindsight, another bite at the judicial apple.

---

[1] The Supreme Court affirmed this position in *Rakas v. Illinois*, 439 U.S. 128 (1978), stating that "it is proper to permit only *defendants whose Fourth Amendment rights have been violated* to benefit from the rule's protections." *Id.* (emphasis added); and this court reiterated these doctrines in *American Samoa Gov't v. Atafua*, 1 A.S.R.3d 174, 175 (Trial Div. 1997), and *American Samoa Gov't v. Dunham*, 1 A.S.R.3d 176, 177 (Trial Div. 1997), by holding that Article I, § 5 applies only to defendants who have a "legitimate expectation of privacy" or a "property or possessory interest." *Id.*

■ Even assuming *arguendo* that a rehearing is appropriate, Pearson still fails to present any strong evidence to support his newly-presented claim. He now argues that he was a "houseguest" of Viena and cites *Olson v. Minnesota*, 495 U.S. 91 (1990), in support of this contention. As a houseguest, Pearson would have "a reasonable expectation of privacy," the standard used in *Katz*, 389 U.S. at 351, to judge whether Fourth Amendment protections apply.

The testimony and evidence before us, however, indicate that Pearson was not staying at Viena's residence as a houseguest. Viena testified at the suppression hearing that she did not even know Pearson was staying at her residence or anywhere on her property.[2] We weighed the testimony of Viena, the owner of the property and one in a better position to evaluate the concept of possessory interest, against that of Pearson's, 17-year-old peer[3] and found Viena's testimony to be more persuasive. It was also more consistent with the rest of the evidence when looked at as a whole. Defendant's cousin, Albert Pearson, testified that defendant often sleeps at his house and is allowed to come over "whenever he likes." If Pearson was living at the home of Viena, we think it reasonable to conclude that his aunt might at least know that fact or that Pearson would not need an open invitation to stay at another relative's home. The Supreme Court in *Olson* considers an overnight guest to be one who is in the owner's home with the explicit knowledge and permission of the host. *Olson*, 495 U.S. at 98-99. Even if Pearson was legitimately on Viena's premises, this is not enough to demonstrate a legitimate expectation of privacy. *See Olson*, 495 U.S. at 97 (citing *Rakas*, 439 U.S. at 142-48).

As discussed in our earlier order, Pearson's own actions and testimony also support our conclusion. Pearson did not come into the house until the early hours of the morning, well past the time everyone would be in bed. He evidently dropped the M1 Carbine and sweater off in the room and then went down to the public motel lobby to sleep. Most "houseguests" do not sneak into their host's home to drop contraband off and then tip-toe out again to sleep in another building. It is also

---

[2] The prosecutor, Frederick O'Brien, asked Viena, "Manaia [Pearson] was staying at your place [around the time of the arrest], isn't that correct?" Viena responded, "Manaia was not staying at *my* place at that time. Mr. O'Brien then asked, "He didn't spend the night there?" Viena replied, "No, in fact I didn't even know Manaia was there."

[3] We can only guess that Katherine Viena told police officers that the room in which they found incriminating evidence belonged to Pearson because he once lived in it, information that was not given to this court the first time around. His past ownership, however, does not translate into present property rights.

reasonable to infer from the fact that Pearson dropped off incriminating evidence in Viena's house that he himself thought of it as a former, not current, residence and thus a place the police might not search. Moreover, Pearson's decision to sleep in a public place, leads us to believe that Pearson was not consciously seeking to invoke Fourth Amendment privacy protections. Last, we cannot help but notice that Pearson was not discovered by police in a house—the place where one is most likely to find a houseguest.

But even if we reconsider Pearson's claim, taking into account the new facts contained in the affidavits of Viena and Pearson, we *still* arrive at the same conclusion. The new evidence proposed is intrinsically fraught with credibility problems. We cannot help but glance askance at the striking changes in Pearson's story. But even with the nebulous assertions of ownership and privacy interests in defendant's latest motion, we cannot cull sufficient justification to reverse our decision. Not only are these assertions vague, conflicting, and tainted with questions of unreliability, but they do not indicate the proprietary interest necessary to trigger Pearson's Fourth Amendment protections.

In his motion for reconsideration, Pearson cites an impressive array of cases in which the defendant was found to have a reasonable expectation of privacy[4] and gives us a detailed discussion of the facts used by these courts to draw this conclusion. Unfortunately, Pearson provides us with scant additional support regarding his case, and the facts which he does provide contradict earlier testimony, thus, negativing the persuasiveness of his claims.[5] Not enough information is given to the court to decide in favor of Pearson, even if we take into account the 12 factors used by the *Olson* court, 495 U.S. at 97, n.4.[6]

---

[4] *See United States v. Robertson*, 660 F.2d 853 (9th Cir. 1978); *Minnesota v. Olson*, 495 U.S. 91 (1990); *United States v. Bulman*, 667 F.2d 1374 (11th Cir. 1982); *Jones* (no citation given); *United States v. Harwood*, 470 F.2d 322 (10th Cir. 1972); *United States v. Davis*, 932 F.2d 752 (9th Cir. 1991).

[5] The additional information is contained in two affidavits recently submitted by Viena and Pearson, dated January 12 and 13, 1998 respectively. Pearson avers that "[his] father is a joint owner of the property searched. The Samoan communal ownership of land . . . makes it even more likely that [he] could reasonably anticipate that this area would be private."

[6] The 12 factors used in *Olson* are:
 (1) the visitor has some property rights in the dwelling;
 (2) the visitor is related by blood or marriage to the owner or lessor of the dwelling;
 (3) the visitor receives mail at the dwelling or has his name on

▮That defendant's father is a joint owner of Viena's home is not dispositive of Pearson himself having any property interest or expectation of privacy in the room searched. In *United States v. Davis*, 932 F.2d 752, 757 (1991), it was the defendant himself who paid a portion of the rental payments, not his father. The defendant took affirmative steps to ensure his privacy by the taking the precaution of storing items in a locked safe.[7]

Viena apparently seeks to neutralize this contradistinction by stating in her affidavit that her home is a "family home." She argues that "all of the members of the family can . . . reasonably expect that their privacy will be respected and that items left in the home will be secure from outsiders." But this court takes issue with the credibility of this characterization since it differs so starkly from Viena's original testimony. And even with it, Pearson has failed to demonstrate a legitimate expectation of privacy in Viena's house, as an "overnight guest" or otherwise.[8]

---

the door;
(4) the visitor has a key to the dwelling;
(5) the visitor maintains a regular or continuous presence in the dwelling, especially sleeping there regularly;
(6) the visitor contributes to the upkeep of the dwelling, either monetarily or otherwise;
(7) the visitor has been present at the dwelling for a substantial length of time prior to the arrest;
(8) the visitor stores his clothes or other possessions in the dwelling;
(9) the visitor has been granted by the owner exclusive use of a particular area of the dwelling;
(10) the visitor has the right to exclude other persons from the dwelling;
(11) the visitor is allowed to remain in the dwelling when the owner is absent; and
(12) the visitor has taken precautions to develop and maintain his privacy in the dwelling.

[7] In examining the facts of the *Davis* case, the Supreme Court found it "significant that Sonnie Davis paid at least a portion of the rent for Andrews' apartment. Having assumed an ongoing obligation to pay the rent, Sonnie Davis exercised partial or joint control over the premises." *United States v. Davis*, 932 F.2d 752, 757 (1991). In contrast, here, Pearson did not exercise control over Viena's property.

[8] Ms. Townsend asked Viena, "Could you describe this residence. . .?" Viena replied, "I live there where my business is at. Ms. Townsend asked, "O.K. Could you describe it?" Viena replied, *"That's my home."*

The standard used in *Katz* is one in which an individual has "an actual, subjective expectation of privacy." But, this expectation must be one which "society is prepared to recognize as reasonable." *Katz*, 389 U.S. at 351. We do not believe that society, including Samoan society, would be prepared to recognize such a broad, unfettered expectation of privacy—that is, a personal privacy right in any and all residences owned by one's *aiga*. It is reasonable to infer from Pearson's statement that even now that he does not sleep there often, if at all. Viena's prior testimony on the witness stand was that Pearson was not staying at her home. *See supra* note 2. Viena's recent affidavit reads that he sleeps there about "twice a month."[9] This contention that the Samoan communal property arrangement should give those with Samoan blood an ostensibly automatic reasonable expectation of privacy in all Samoan homes—whether or not they actually stay there on a regular, frequent, and consistent basis—would completely reconstruct the essence and meaning of the Fourth Amendment.

Notwithstanding consideration of Pearson's newly presented arguments and facts, a sufficient basis to warrant a reversal of our original order does not exist, and our finding that Pearson's Fourth Amendment rights were not violated stands. We already *carefully* examined whether

---

Previously, Viena had testified that "Manaia was not staying at *my* place at that time.

[9] Viena's affidavit and Pearson's affidavit again differ on this point. Viena's reads that defendant "stays" in the room "at least twice a month." Pearson's states that he stays there "at least once a week." We do not know what either of them means by the word "stay." Does he sleep over; visit with his aunt for a little while during the day every month; drop by to say hello and then leave, walking through this room on the way out; or briefly visit the room when he needs to find a stored item? We can only guess what "at least twice a month" means. Two times, three times, 26 times?

Pearson's rights were violated and determined that they were not; we see no reason to reverse our ruling.

### Conclusion and Order

Defendant's motion for reconsideration is, therefore, denied.

It is so ordered.