963 F.2d 381
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Francis C. PALMER, Defendant-Appellant.
 No. 91-30055.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 4, 1992.*
Decided May 12, 1992.
 
 Before PREGERSON, TROTT and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Francis C. Palmer appeals his jury conviction on four counts of cocaine distribution, in violation of 21 U.S.C. § 841(a)(1) (1988). Palmer argues the district court abused its discretion in failing to grant a mistrial based on alleged prejudicial remarks made by the prosecutor. Palmer also challenges the district court's decision to admit into evidence cocaine which he alleged differed substantially in physical appearance from the cocaine sent to the Drug Enforcement Agency ("DEA") laboratory for analysis. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 (1988), and we affirm.
 
 
 3
 * Steve Mulligan, a former "collector" for a Mafia-type organization, was working with the DEA as a confidential informant. On January 10, 1990, Mulligan contacted the DEA to report that Mike Mallery was selling cocaine in Boise, Idaho. Utilizing money supplied by the DEA, Mulligan arranged to purchase two ounces of cocaine from Mallery. Mulligan met Mallery at a bar in Caldwell, Idaho. Palmer was with Mallery. Palmer left the presence of Mulligan and Mallery to attempt to contact his "source." When Palmer later met Mallery and Mulligan, Palmer advised Mulligan he was unable to locate his drug source. DEA agents surveilled and recorded the meeting.
 
 
 4
 Mulligan testified that when he met Mallery and Palmer at the home of a mutual friend later the same day, Palmer produced an ounce of cocaine and an ounce of methamphetamine from his pocket. Because Mulligan had already returned the money to the DEA, Mulligan made no drug purchase at that time.
 
 
 5
 On February 6, 1990, Palmer was attempting to locate Mulligan. He used a telephone number given to him by Mulligan. The number was for a "shop" where Mulligan was supposedly employed. The telephone number was actually for a DEA undercover telephone. Palmer knew the owner of the business where Mulligan was supposedly employed was named "Bob." DEA Special Agent Bob Dunne received the call and introduced himself to Palmer as the person Mulligan had identified as his boss. Palmer informed Agent Dunne he had two ounces of cocaine he would be willing to sell for $2,800. Later that same day, Palmer met with Agent Dunne and delivered two ounces of 85% pure cocaine. This transaction was recorded on audio and video tapes, which were played for the jury.
 
 
 6
 Palmer called the DEA undercover telephone again on February 14, 1990, and left a message for Agent Dunne. Agent Dunne returned Palmer's telephone call that same day and learned Palmer had another two ounces of cocaine to sell. Shortly after speaking on the telephone, Palmer and Agent Dunne met to conclude the transaction. Palmer delivered two ounces of 84% pure cocaine to Agent Dunne in exchange for $2,400. During this tape recorded conversation, Palmer offered to obtain large quantities of cocaine for Agent Dunne from a source in Las Vegas. Palmer also asked Dunne if he wished to purchase marijuana or methamphetamine.
 
 
 7
 After the February 14 transaction, the undercover investigation focused primarily on Palmer's methamphetamine manufacturing and distribution activities. However, Agent Dunne still occasionally purchased cocaine from Palmer. On March 26, 1990, Agent Dunne purchased seven ounces of cocaine from Palmer for $8,400. Palmer attempted to sell cocaine to Agent Dunne on March 9, April 4, 5, 12, 13, 24, 30, and May 21 and 31, 1990. Agent Dunne did not accept Palmer's offers on these occasions. On June 6, 1990, Agent Dunne purchased one-half pound of cocaine from Palmer for $9,200. Agent Dunne purchased cocaine from Palmer a total of four times.
 
 
 8
 The DEA investigation culminated in the June 7, 1990 arrest of Palmer and two coconspirators after the latter took possession of a large quantity of methamphetamine precursor chemicals. Among other charges, Palmer was indicted on four counts of cocaine distribution in violation of 21 U.S.C. § 841(a)(1). The methamphetamine and cocaine cases were tried separately. This appeal only involves Palmer's cocaine distribution.
 
 
 9
 Palmer did not dispute the four deliveries of cocaine to Agent Dunne. Instead, he argued at trial that he was entrapped into selling the cocaine. Palmer attempted to establish that Mulligan had told him he was a "hit man" for the Mafia. According to Palmer, Mulligan (1) showed him an assault rifle he kept in his vehicle, (2) boasted about kidnapping and injuring people, (3) made threats to "mess up" Mallery, and (4) implicitly threatened harm to Palmer and his two-year-old son if Palmer did not sell drugs to "Bob." Palmer testified he believed Mulligan would harm him and his son if he did not sell drugs to Agent Dunne, therefore he sold the cocaine to Agent Dunne only in an attempt to satisfy Mulligan.
 
 
 10
 During the trial, Palmer challenged the admission of the cocaine introduced by the government. He argued the government failed to properly and adequately establish the chain of custody. To support his argument, Palmer noted the substance in Exhibit 14 that was sent to the DEA for testing was white, but the substance in Exhibit 14 that was offered into evidence was yellowish-brown. Also, Exhibit 20 had been repacked from seven small bags to one large and one small bag.
 
 
 11
 During the government's cross-examination of Palmer, the government questioned Palmer about whether he had sold drugs prior to meeting Mulligan. The government asked him specifically about an incident where two law enforcement officers discovered vials of cocaine and methamphetamine on Palmer. Palmer denied the drugs were found on his person, claiming they were found in somebody else's car. Because Palmer implied the state case was dismissed because the drugs were not his or because he was innocent, the prosecutor responded, "Because you were in jail on these charges--" The court immediately told the jury the prosecutor's question was not evidence of anything, but merely required a "yes" or "no" answer from Palmer. To impeach Palmer, Officer Todd Littlefield testified for the prosecution later in the trial that he found the drugs in Palmer's coat pocket.
 
 
 12
 Palmer made a motion for a mistrial based on the prosecutor's statement. Palmer argued the statement told the jury he was incarcerated at the time of trial and was intentionally designed to prejudice Palmer. The district court denied the motion. Despite the district court's offer and willingness to instruct the jury regarding the prosecutor's comment, Palmer did not seek an instruction on the point.
 
 
 13
 The jury returned a verdict of guilty on all four counts of cocaine distribution. Palmer timely filed a notice of appeal to this court.
 
 II
 
 14
 Palmer argues the district court erred in refusing to grant a mistrial based on the prosecutor's comment during cross-examination regarding the dismissal of state drug charges.[1] The district court's decision regarding whether to grant or deny a motion for mistrial is reviewed for an abuse of discretion. United States v. Sanchez-Robles, 927 F.2d 1070, 1076 (9th Cir.1991). The court's decision regarding the scope of cross-examination is likewise reviewed for an abuse of discretion. United States v. Perkins, 937 F.2d 1397, 1405 (9th Cir.1991).
 
 
 15
 In argument before the district court, Palmer's attorney argued the statement was prosecutorial misconduct because it told the jury Palmer was in jail on the federal charges and this created unfair prejudice against Palmer. The district court denied the motion because: (1) the statement was not intentional but happened during a "quick exchange of questions and answers," (2) the statement "implies something in the past rather than something in the present," (3) Palmer admitted selling cocaine to Agent Dunne, (4) Palmer had testified that he had been in jail over 30 times, and (5) a cautionary instruction would alleviate any prejudice the statement created.
 
 
 16
 We have reviewed the challenged statement and conclude there was no abuse of discretion in refusing to grant a mistrial. We agree with the district court that whether dismissal was required under the circumstances was not "even a close question." Any potential prejudice created by the statement was immediately cured by the district court's admonition to the jury that a question alone is not evidence of anything. See United States v. Davis, 932 F.2d 752, 761 (9th Cir.1991) ("[o]rdinarily cautionary instructions are sufficient to cure the effects of improper statements"). Palmer had the opportunity to further instruct the jury but chose not to do so. The district court did not abuse its discretion in refusing to grant a mistrial. We note, however, that prosecutors who indulge in aggressive credibility assaults on defendants must be mindful at all times to stay within the bounds of ethical standards and must not regard affirmances of convictions as condoning behavior that crosses the line into forbidden territory. See Berger v. United States, 295 U.S. 78 (1935).
 
 III
 
 17
 Palmer challenges an additional thirteen statements made by the prosecutor in his cross-examination of Palmer and in his closing argument. For the prosecutor's conduct to constitute reversible error, Palmer must establish: "(1) the existence of prosecutorial misconduct; (2) that the issue was preserved for appeal; and (3) that defendant was prejudiced by the misconduct." United States v. Christophe, 833 F.2d 1296, 1301 (9th Cir.1987); see also Sanchez-Robles, 927 F.2d at 1076. The prosecutor's conduct or comments must be evaluated based on the entire context of the trial. Christophe, 833 F.2d at 1301.
 
 
 18
 Whether the prosecutor's actions or comments constitute misconduct is determined in part based on (1) ethical standards, United States v. Young, 470 U.S. 1, 7-10 (1985), (2) whether comments of the defense counsel "invited response," id. at 12-14, (3) whether the arguments are supported by reasonable inferences from the record, United States v. Polizzi, 801 F.2d 1543, 1558 (9th Cir.1986), (4) whether the prosecutor vouched for the credibility of a government witness, United States v. Roberts, 618 F.2d 530, 533 (9th Cir.1980), and (5) whether the government prompted impermissible evidence from the witness, Christophe, 833 F.2d at 1301.
 
 
 19
 For those comments where there was no timely objection in the trial court, we will only review a prosecutor's alleged improper comments for plain error. Young, 470 U.S. at 15-16. "A plain error is a highly prejudicial error affecting substantial rights." United States v. Payne, 944 F.2d 1458, 1463 (9th Cir.1991) (quotation omitted), cert. denied, 118 L.Ed.2d 313 (1992).
 
 
 20
 To evaluate the prejudicial impact of the statements, we must examine "the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." Young, 470 U.S. at 12. In evaluating the fairness of the trial, the prosecutor's comments cannot be viewed in isolation, but must be considered in the appropriate context. Id. at 11. Reversal is only required if it is "more probable than not that the misconduct materially affected the verdict." Christophe, 833 F.2d at 1301.
 
 
 21
 Palmer identifies thirteen individual statements which he alleges constitute reversible prosecutorial misconduct. We conclude, however, the statements were either proper or were harmless beyond a reasonable doubt.
 
 
 22
 Comment 1: The prosecutor asked Palmer whether it would surprise him if the government was in possession of twelve Montana police reports investigating his drug-trafficking activities. Palmer's objection to the question was overruled. The question was withdrawn by the prosecutor and rephrased. No objection was made to the modified question. The prosecutor's questions did not constitute misconduct because the district court did not abuse its discretion in permitting testimony about Palmer's understanding of the circumstances in Montana. Furthermore, the question Palmer objected to was withdrawn by the prosecutor and asked in a different manner without objection. No plain error occurred.
 
 
 23
 Comments 2, 4, 7, and 9: Palmer's objection to each of these questions was sustained. Even though the prosecutor's questions were improper if viewed in isolation, in the context of the entire trial, no reversible error occurred. We are convinced the misconduct did not materially affect the verdict because the jury was instructed that the attorney's questions were not evidence and should be disregarded if the court sustained an objection, thus the error was harmless. See Polizzi, 801 F.2d at 1558 (misconduct is harmless where an objection is sustained and the jury is instructed to disregard the statement). Because the government's case against Palmer was very strong, any potential prejudice was neutralized by the judge's instructions. Davis, 932 F.2d at 761-62.
 
 
 24
 Comment 5: Palmer did not object at trial to a line of questions and answers that he now asserts constituted misconduct. The prosecutor's questioning of Palmer about whether he made a particular statement to a state bail officer did not create plain error.
 
 
 25
 Comment 6: The prosecutor, in questioning Palmer about the criminal background of an individual who had contact with Palmer's son, asked Palmer what crime was committed that resulted in a prison sentence for the individual. Palmer stated the person had been sent to the penitentiary for possession of a firearm, but he thought the murder conviction had been reversed. The prosecutor stated, "The murder conviction got reversed? That means he didn't do it?" Palmer objected, but the prosecutor withdrew the question before the district court could rule on the objection. Although it was impermissible for the prosecutor to ask Palmer to speculate about the grounds on which the murder conviction was reversed, the question was immediately withdrawn. We must assume the jury followed the district court's instruction to give no evidentiary weight to the questions and arguments of the attorneys. The question was not so prejudicial that it would override this assumption. The potential prejudicial impact of the statement was adequately cured by the district court's instructions to the jury. Davis, 932 F.2d at 761.
 
 
 26
 Comment 8: Palmer objected at trial to the prosecutor asking him several related questions about whether he had ever been stopped by a police officer and had identified himself as Frank Taylor. The district court overruled Palmer's objection. Palmer now argues the prosecutor engaged in misconduct because he continued to ask the questions. The prosecutor's questions were not improper, but were condoned by the district court's ruling. The district court did not abuse its discretion in allowing the line of questioning. The prosecutor's questions merely focused on Palmer's recollection of past events, and were the proper subject of questioning.
 
 
 27
 Comments 10-14: Palmer argues the prosecutor engaged in misconduct during closing argument when he commented on the credibility of Palmer. Palmer did not preserve these alleged errors to challenge on appeal. We conclude there was no error, let alone a highly prejudicial error. "It is neither unusual nor improper for a prosecutor to voice doubt about the veracity of a defendant who has taken the stand. The prosecutor's interpretation of [Palmer's defense] is also well within the bounds of acceptable comment." United States v. Birges, 723 F.2d 666, 672 (9th Cir.), cert. denied, 469 U.S. 863 (1984); see also United States v. Molina, 934 F.2d 1440, 1445 (9th Cir.1991) (the prosecutor could properly argue one side was lying because it was a reasonable inference from the record); United States v. Rewald, 889 F.2d 836, 862 (9th Cir.1989) ("the government's use of metaphors hardly violated the dictates of due process"), cert. denied, 111 S.Ct. 64 (1990). This conclusion is especially true where the prosecutor's arguments are merely in response to the defense counsel's attack on the credibility of the government informant when compared to Palmer. The prosecutor never personally vouched for the credibility of Dunne, but merely argued the jury should not believe Palmer's version of the facts. See Molina, 934 F.2d at 1445 ("it was proper for the government to argue that the jury ought not to believe the appellant's version"). We have carefully reviewed each alleged impropriety. However, based on the broad latitude given the attorneys in presenting their closing argument, id., none of the prosecutor's comments even come close to satisfying the plain error standard. See Young, 470 U.S. at 16.
 
 
 28
 Viewing each of the challenged statements cumulatively in the context of the entire trial, Lincoln v. Sunn, 807 F.2d 805, 814 n. 6 (9th Cir.1987), Palmer has failed to satisfy his burden of establishing either the prosecutor's misconduct or that the misconduct "materially affected the verdict." Christophe, 833 F.2d at 1301. Throughout the trial, the prosecutor merely zealously sought to discredit Palmer's theory of the defense or his explanation of the drug transactions. Furthermore, the "evidence of the defendant's guilt overwhelms whatever incriminating aspects inadmissible statements may have had in isolation." Davis, 932 F.2d at 761 (quotation omitted).
 
 IV
 
 29
 Palmer argues the trial court erred in admitting Exhibits 14 and 20 because, at the time of trial, the physical appearance of the cocaine differed from when it was sent to the DEA lab for testing. He argues the chain of custody was not adequately established before the evidence was admitted. We review the district judge's evidence rulings for an abuse of discretion. United States v. Goland, No. 90-50423, slip op. 2939, 2948-49 (9th Cir. March 25, 1992). Rulings will be reversed only if the error more likely than not affected the verdict. Id. at 2949.
 
 
 30
 The government must establish the chain of custody of an object related to the commission of a crime. United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.), cert. denied, 112 S.Ct. 164 (1991). The evidence must be in "substantially the same condition as when [it] was seized." Id. (quotation omitted). "The district court may admit the evidence if there is a reasonable probability the article has not been changed in important respects." Id. (quotation omitted).
 
 
 31
 We conclude the district court did not err in admitting the narcotics evidence. First, the government presented witnesses to establish: (1) the cocaine was packaged and sealed before being shipped to the DEA laboratory; (2) the envelopes arrived at the laboratory in a sealed condition; (3) the laboratory opened the bags and tested the substances; (4) the contents of the bags were either returned to the bag it arrived in or were repackaged to allow the original container to be fingerprinted; (5) once the substance was tested and returned to the package, it was resealed; (6) the sealed package was returned to the DEA; and (7) a variance in the color of the cocaine appeared to be caused by heat or moisture, or a gradual breakup of the components of the drug. "[A] reasonable juror could find the evidence had not been altered" and was in "substantially the same condition." Id. Second, because Palmer admitted he sold cocaine to Agent Dunne, he cannot demonstrate the admission of the cocaine materially affected the verdict and thus created reversible error. Exhibits 14 and 20 were therefore adequately authenticated to allow their admission into evidence.
 
 V
 
 32
 Palmer has failed to show reversible prejudicial prosecutorial misconduct. The prosecutor's challenged statements either did not constitute misconduct or were harmless because they did not materially affect the verdict. The district court correctly admitted Exhibits 14 and 20 because the chain of custody had been sufficiently established to allow a reasonable juror to determine the exhibits had not been tampered with and were substantially the same as when the DEA received them.
 
 
 33
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Palmer attempts to aggregate a variety of errors to support his claim that a mistrial should have been granted. The argument before the district court in support of the motion for mistrial was based solely on the prosecutor's alleged misconduct in commenting on the dismissal of the state charges. We will review the motion for mistrial only based on the ground argued below. The other alleged errors will be reviewed individually