**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bill Edward RUSH,**
**Defendant-Appellant.**

No. 83–1201.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 1984.

Decided Dec. 26, 1984.

Ivan Abrams, Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellee.

Stevan Noxon, Asst. Federal Public Defender, Fresno, Cal., for defendant-appellant.

Before ANDERSON, SKOPIL and POOLE, Circuit Judges.

SKOPIL, Circuit Judge:

Bill Edward Rush appeals his conviction of wire fraud and transportation of stolen goods. Rush argues that (1) the trial court abused its discretion in denying his motion for a new trial; (2) there was insufficient evidence upon which to sustain the conviction; and (3) the district court erred by failing to instruct the jury that knowledge is an element of the crime of transporting stolen goods. We affirm.

## BACKGROUND

On May 8, 1981 Pittsburgh Plate Glass Industries—Glass Division, Fresno account ("Pittsburgh Glass") issued a check for $51.15 payable to "Construction Material Suppliers." This check was mistakenly mailed to the business's prior address in Fresno, California. Pacific Steel Building Systems ("Pacific Steel"), owned by defendant Rush, had also previously been located in Fresno, but had moved to Chowchilla, California before the check was mailed.

On May 13, 1981 Rush's office mistakenly received the check that Pittsburgh Glass issued on May 8, 1981. Rush directed his secretary to deposit the check. The check had been altered so that the payee read "Pacific Steel" and the amount was changed from $51.15 to $187,110. There is no direct evidence regarding who altered the check, or where and when the alteration occurred. Rush's secretary, Ms. Altimus, took the check to the Bank of America in Chowchilla. She deposited it for credit to the Pacific Steel account. On June 2, 1981 Richard Koenig, the comptroller from Rush's corporate headquarters in Hearst, Texas, directed Ms. Altimus to transfer $175,000 from Pacific Steel's account in California to the account of Rush Ltd. Co. ("Rush Ltd.") at the First National Bank of Fort Worth, Texas.[1] Rush owned Rush Ltd. which was a parent corporation of four subsidiaries, including Pacific Steel. Rush was the president and sole shareholder of each subsidiary company.

On June 3, 1981, on Koenig's instruction, Ms. Altimus directed Bank of America in Chowchilla to transfer the funds to the Fort Worth National Bank of Texas. On June 5, 1981 this transaction was completed. When the general office of Pittsburgh Glass recognized their check had been altered, they quickly notified Bank of America. Upon discovering that $175,000 of this money had been transferred by wire to Fort Worth National Bank, Bank of America sent a telegram on July 6, 1981 to that bank requesting that they hold all funds in the Rush Ltd. and Pacific Steel accounts.

On September 23, 1982 Rush was indicted for (1) wire fraud in violation of 18 U.S.C. § 1343 ("Count I"); (2) false statement to a bank, 18 U.S.C. § 1014 ("Count II"); and (3) transportation of stolen goods, 18 U.S.C. § 2314 ("Count III"). Count II was dismissed on the first day of trial at the government's request. The jury found Rush guilty of Counts I and III. A motion for new trial pursuant to Fed.R.Crim.P. 33 was timely filed and denied by the district court in a memorandum decision. Judgment was entered against Rush on August 15, 1983 for wire fraud and transportation of stolen money, violations of 18 U.S.C. §§ 1343 and 2314 respectively.

## DISCUSSION

Rush argues that the district court abused its discretion when it denied Rush's motion for a new trial. Such motion should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel,* 654 F.2d 538, 545 (9th Cir.1981). The district court's decision is reviewed for an abuse of discretion. *Id.* In its memorandum denying Rush's motion for a new trial, the court erroneously mentioned Count II, false statement to a bank, which had been dismissed earlier. It neglected mentioning Count III, interstate transport of stolen money, for which the jury rendered a guilty verdict. On this

---

1. This transfer was originally directed to the First National Bank of Fort Worth, Texas. Because Rush's account was actually with the Fort Worth National Bank, an exchange of telegrams between banks was required before the $175,000 could be successfully deposited there.

appeal Rush argued that this error constituted an abuse of or failure to exercise discretion or a misapplication of law. When we originally heard this case, we agreed that the trial court had not exercised its discretion regarding Rush's conviction under Count III. *See United States v. Friedland*, 660 F.2d 919, 931 (3d Cir. 1981) (citing *United States v. Iannelli*, 528 F.2d 1290, 1292 (3d Cir.1976)). We did not agree, however, that this constituted grounds for remanding the entire case. We remanded for the limited purpose of having the district court clarify and correct its decision. We retained jurisdiction.

■ On October 1, 1984 the district court filed an amended decision. The amended decision is now before us, and we find there was no abuse of discretion in denying the motion for a new trial. The trial court's original and amended memorandum decisions fully discuss both grounds upon which Rush based his motion for a new trial.

First, Rush claimed that the verdict was against the weight of the evidence. Specifically, he claims the evidence was insufficient under both counts to establish a willful, knowing scheme that Rush directed or caused either the interstate transportation of stolen money, Count III, or a wire transmission to execute a fraudulent scheme, Count I.

■ The trial judge considered the facts and found that a check had been altered, deposited, and transferred interstate from one of Rush's business accounts to his corporate account. The court found that a jury could not infer directly from the evidence when the check came into Rush's possession; when the designation of the payee and the amount appearing on the check was altered; or who caused the alterations. There was, however, evidence of Rush's motive to alter the check and his attempt to withdraw funds from his corporation's Texas bank account, after being informed that the source of those funds was a fraudulently altered check. Rush attempted to benefit from the presence of the funds in Texas shortly after he became aware that the Bank of America was charging that the check was fraudulently altered. This evidence supplied the necessary link from which Rush's intent could be logically inferred. The trial court properly defined its role in ruling on a motion for a new trial, carefully weighed the evidence, and reached a reasoned decision that there was sufficient evidence to submit both Counts I and III to the jury. There was no abuse of discretion.

■ Rush also asserts that a new trial should have been granted on the ground of prosecutorial misconduct. There was no abuse of discretion by the district court in the treatment of this claim by Rush. The judge carefully considered each allegation, referred to his trial notes, and correctly concluded that each incident was objected to and that "the court forcibly dealt with the objections on each occasion and gave appropriate admonitions to the jury." These admonitions were sufficient to avert prejudice to Rush.

■ Rush's second ground for reversal of the trial court is that there was insufficient evidence to sustain the verdict. There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Marabelles*, 724 F.2d 1374, 1377 (9th Cir.1984) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)) (emphasis in original). Conflicting evidence is resolved in favor of the verdict. See *United States v. Ramos*, 558 F.2d 545, 546 (9th Cir.1977).

■ Rush argues there is insufficient evidence that he either directed or otherwise caused stolen money to be transported interstate in violation of 18 U.S.C. § 2314, or caused an interstate wire transmission to be made in furtherance of a scheme to defraud in violation of 18 U.S.C. § 1343. Rush contends the only reasonable explanation presented by the evidence is that Koenig directed the interstate transactions, and that these transactions were not foreseeable consequences of the check being deposited in California.

Viewing all the evidence in the light most favorable to the government, however, there was evidence that Koenig acted with Rush's approval in managing the funds of the five companies. Koenig was hired by Rush. They had discussed the standard operating procedure of transferring corporate funds to Rush Ltd. Rush's signature was on a check authorizing the transfer from one company to another. Rush was the corporate president and sole shareholder of all five corporations. Rush's testimony as to when he became suspicious, or was notified that the check had been fraudulently altered, was contradicted by other witnesses. Rush attempted to remove funds from his Texas bank account after a bank official told him the source of those funds was a bad check. Although there was no direct evidence that Rush directly ordered the interstate transfer, there was sufficient circumstantial evidence from which the jury could reasonably have inferred that Rush was responsible for the transfer.

■■■■ Rush's third contention on appeal is that the district court erred by failing to instruct the jury that knowledge is an element of 18 U.S.C. § 2314, transportation of stolen goods. Jury instructions are reviewed as a whole and in the context of the entire trial. *Marabelles*, 724 F.2d at 1382. "A trial judge is given substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented." Id. at 1382–83 (citing *United States v. James*, 576 F.2d 223, 226 (9th Cir.1978)). While a criminal defendant is entitled to instructions reflecting his theory of the case, challenges to the particular language or formulation of such instructions are reviewed for abuse of discretion. *Marabelles*, 724 F.2d at 1383.

■■■■ Jury instructions are held to adequately cover the element of knowledge under 18 U.S.C. § 2314 if "the jury are instructed they must find that the defendant transported the goods 'knowing [the] same to have been stolen ....' " *United States v. Gallo*, 543 F.2d 361, 367 (D.C.Cir. 1976) (quoting *United States v. DeKunchak*, 467 F.2d 432, 437 (2d Cir.1972)). We agree with the D.C. Circuit that to impose

an "actual knowledge" requirement would overstate the standard imposed by the statute. *Gallo*, 543 F.2d at 367. At the same time, the instructions should not lead the jury to believe that the evidence of knowledge need only reach the level of negligence. *Id.*

■■■■ The district judge read the language of the statute to the jury, defined its elements and terms, and stated that the jury must find, "that the defendant acted knowingly and willfully." The court then defined a willful act. The court's instructions were as thorough in explaining the elements of knowledge and intent as the instruction requested by the defendant. The defendant's theory of the case, that the evidence failed to establish Rush's knowledge that the funds were "stolen," was adequately presented, albeit not worded precisely as Rush preferred. The state of mind requirement was defined repeatedly. The explanation that intent may be circumstantially inferred was tempered by reference to the jury's role in weighing the evidence, and the prosecution's burden of proof. The instructions adequately describe the elements of knowledge required under section 2314. There was no error.

AFFIRMED.