**UNITED STATES, Plaintiff,**

v.

**Sonnie DAVIS and Kevin Davis, Defendants.**

**No. CR–88–0394–DLJ.**

United States District Court, N.D. California.

Sept. 27, 1989.

Sp. Asst. U.S. Atty. Russ Giuntini, Dist. Atty's. Office, Alameda County, Cal., and Joel Levin, Asst. U.S. Atty., San Francisco, Cal., for plaintiff.

Randy Montesano, San Francisco, for defendant Sonnie Davis.

Stephen Shaiken, San Francisco, for defendant Kevin Davis.

## ORDER

JENSEN, District Judge.

On August 11, 1989, this Court heard: (1) defendant Sonnie Davis' motion for new trial, to vacate the convictions, and to dismiss the indictment; (2) defendant Sonnie Davis' motion to vacate judgment of conviction; and (3) defendant Kevin Davis' motion for new trial and motion for judgment of acquittal.

## I. SONNIE DAVIS' MOTION FOR NEW TRIAL, TO VACATE THE CONVICTION, AND TO DISMISS THE INDICTMENT [1]

### A. *Factual Background*

This case was prosecuted by Special Assistant United States Attorney (SAUSA) Russ Giuntini. Giuntini is a Deputy District Attorney in Alameda County who was appointed as SAUSA to handle this prosecution on June 22, 1988. The appointment letter was signed by Mark Wilkoff, Deputy Director in the Office of Attorney Personnel Management (OAPM) of the Department of Justice, and Giuntini took the oath of office on that date. Wilkoff had been delegated authority for such appointments by Linda Cinciotta, Director of OAPM, on July 30, 1987, and Cinciotta had been delegated such authority by Stephen S. Trott, Associate Attorney General (AAG), on October 24, 1986. The power to appoint SAUSAs exercised by AAG Trott in the 1986 delegation, was transferred by the Attorney General from the AAG to the Deputy Attorney General (DAG) on February 16, 1988. As of June 1988, the DAG had not executed a written delegation of this power to the OAPM.

In an order dated January 31, 1989, DAG Harold Christensen, *inter alia*, delegated his authority to appoint SAUSAs to Linda Cinciotta, the Director of the Office of Attorney Personnel Management (OAPM). The delegation became effective as of January 31, 1989, the date of the order.

In a second order dated February 10, 1989, DAG Christensen, *inter alia*, confirmed Cinciotta's authority, authorized "her delegee" to make such appointments, and ratified "all actions taken by Mrs. Cinciotta or her delegee pursuant to this delegation between February 1988 and the date of this order."

DAG Christensen has submitted an affidavit stating that the OAPM is an office under the direct supervision of the DAG and that it was responsible, under such supervision, for personnel actions, including the appointment of SAUSAs, at the time of the appointment in this case.

### B. *Discussion*

■ Defendants contend that Giuntini was not properly designated as a SAUSA because there was no written delegation of authority by the DAG to the authorizing OAPM Department official at the time of his appointment, and that as a result his appointment was of no legal effect. Defendants' contention is that in June 1988, only the Attorney General or the DAG could exercise the power to appoint SAUSAs. Defendants therefore assert that in the absence of proper appointment of the prosecutor the convictions must be vacated and the Indictment dismissed.

Relying on *Lee v. United States*, 45 Ct.Cl. 57 (1910), where the court held that a specially appointed attorney was not entitled to payment for services rendered prior to his formal appointment, despite a retroactive order issued in his behalf, defendant argues that the February 10, 1989 order validating all of the appointments *nunc pro tunc* did not solve the problem. Defendant concludes that the failure to properly designate Giuntini voided all of the

---

**1.** Defendant Kevin Davis joined in these motions.

proceedings before the Grand Jury and this Court because they were conducted by someone other than an attorney for the United States.

Plaintiff challenges defendant's argument on grounds that it rests on an invalid assumption about the requirements for delegating appointment power. Plaintiff points out that although the DAG and AAG periodically issue written letters documenting the delegation of authority, there is no legal or regulatory framework requiring that the delegation of appointment power be set forth in written form.

In addition, plaintiff points out that the case law also makes clear that defendant's focus on the absence of a written delegation letter from DAG Christensen is misplaced. In *United States v. Balistrieri,* 779 F.2d 1191, 1209 (7th Cir.1986), defendants contended that the Indictment should have been dismissed because the Department of Justice Strike Force attorney did not have a letter of authorization. The court assumed that no letter had been issued and concluded that the appointment was valid because a letter of authorization was not essential to the appointment.

Finally, plaintiff argues that even assuming a deficiency with the appointment, the DAG remedied this problem on February 10, 1989, when he ratified the actions taken by Cinciotta. Plaintiff contends that *Lee* does not stand for the proposition that the DAG is incapable of ratifying employment decisions made by a subordinate in good faith. Plaintiff maintains that this conclusion is also supported by the rule in agency law that the principal may ratify and affirm unauthorized acts retroactively, even if the agent acts without authority in the name of the principal. *See, e.g., United States v. Heinszen & Co.,* 206 U.S. 370, 382, 27 S.Ct. 742, 744–45, 51 L.Ed. 1098 (1907).

This Court finds plaintiff's argument persuasive. *Balistrieri* as well as the other cases cited by plaintiff firmly establish the propriety of Justice Department officials delegating their appointment power, and do not in any way require that the delegation must be accomplished through written instruments. The cases make clear that what is essential is whether or not the attorney was in fact authorized, rather than whether or not a letter of authorization had in fact been issued. The declarations submitted by plaintiff unequivocally establish that Cinciotta and Wilkoff were in fact authorized to effect the appointment of SAUSAs.

There is, moreover, generic written documentation of the delegation of the appointment function at issue here. The relevant section is 28 C.F.R. § 0.15(e),[2] in effect since 1981, which establishes the relationship between the DAG's Office and the OAPM, and documents functional delegation of the DAG's authority to appoint SAUSAs to the Office of Attorney Personnel Management.

Even assuming written documentation of the delegation is required, this Court finds that the DAG remedied this problem when he ratified the actions taken by Cinciotta by order of February 16, 1988. Plaintiff is correct in arguing that *Lee* does not stand for the proposition that the DAG is incapable of ratifying employment decisions made by a subordinate in good faith. The court in *Lee* took pains to limit its ruling to the narrow issue of whether or not an attorney specially retained by the government is entitled to receive compensation for services rendered prior to the date of his appointment. Contrary to defendant's contention, the court did not consider whether or not the government can retroactively ratify the authorized acts of its employees.

Accordingly, this Court concludes that the February 10, 1989, *nunc pro tunc* order authorized Giuntini's appearance as a SAUSA before the Grand Jury in June 1988.

Trial in this case commenced on February 21, 1989, which was after the written delegation by the DAG to OAPM. Giuntini's appearance at trial would therefore

2. Section 0.15(e) states that "[t]he official in the Office of the Deputy Attorney General responsible for attorney personnel management shall be the Director, Office of Attorney Personnel Management." 28 C.F.R. § 0.15(e).

have been at a time when his appointing official had been delegated authority in writing by the DAG and consequently would appear to be authorized without resort to the retroactive application of the *nunc pro tunc* delegation order.

Even if *Lee* is responsive to the issue at bar and retroactive application cannot be given to the delegation order authorizing Giuntini's appearance before the Grand Jury, this Court finds that the absence of a written delegation is a procedural error of technical impact only which caused no prejudice to defendants.

In *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 941–42, 89 L.Ed.2d 50 (1986), the Supreme Court held that the petit jury's guilty verdict established probable cause to charge defendants and thus rendered harmless any error in the Grand Jury's charging decision that may have resulted from the simultaneous appearance of two law enforcement officers before the Grand Jury. The Court reasoned that the societal costs of retrial are too substantial to justify setting aside the verdict simply because of an error in the Grand Jury process. *Id.* 106 S.Ct. at 943.

Based on *Mechanik*, this Court holds that the jury's verdict finding defendant guilty beyond a reasonable doubt of the offenses charged in the Indictment rendered harmless any error that might have flowed from his appearance before the Grand Jury.

A finding of harmless error is further based upon the fact that Giuntini presented the case to the Grand Jury under circumstances where the procedure was under the control of the United States Attorney's Office. The Indictment in this case was drafted by an Assistant United States Attorney who was present on the one and only occasion the matter was presented to the Grand Jury, and the Indictment was signed by the Acting United States Attorney. After the Indictment, Giuntini handled the case in consultation with the United States Attorney's Office.

For these reasons, this Court denies the motions of defendants to grant a new trial;

to vacate the convictions; and to dismiss the Indictment.

## II.  SONNIE DAVIS' MOTION TO DISMISS UNDER SPEEDY TRIAL ACT

### A.  *Background Facts*

On March 31, 1988, defendant Sonnie Davis, along with Avis Andrews and Marilyn Morrison, was arrested by Oakland police officers and booked on various state narcotics offenses.

On or about April 1, 1988, the Alameda District Attorney's Office filed a felony complaint in state court, charging defendant Sonnie Davis, Marilyn Morrison, and Avis Andrews, with violating section 11351 of the California Health and Safety Code. On May 6, 1988, pursuant to California Penal Code section 1385, the complaint was dismissed based on the pending federal court proceedings. Defendant remained in state custody on a state parole violation.

On June 22, 1988, defendant was indicted by a federal Grand Jury. He was subsequently arrested and arraigned on or about June 29, 1988.

On March 17, 1989, defendant was convicted on all four counts in the Indictment: one count of conspiracy to distribute heroin, two counts of possession with the intent to distribute heroin, and one count of obstruction of justice.

### B.  *Discussion*

■ Defendant contends that he was "arrested or served with a summons in connection with such charges," within the meaning of 18 U.S.C. section 3161(b), on May ·6, 1988, the date the prosecutor announced that the defendant would be federally prosecuted and the state complaint was dismissed. Defendant argues that the May 6 date triggered the 30–day limitation period in section 3161(b), since he was in custody for offenses charged in the Indictment. Defendant maintains that dismissal under 18 U.S.C. section 3162(a)(1) would be an appropriate sanction for the violation of section 3161(b).

Based on the record in this case, this Court finds that defendant's argument lacks merit. Contrary to defendant's contention, defendant was in custody for a state parole violation and not the charges in the federal Indictment. In addition, the record is clear that defendant was never arrested or served with summons in connection with the federal charges until June 29, 1988, one week after he was indicted. Defendant's motion to dismiss under the Speedy Trial Act is therefore denied.

## III. KEVIN DAVIS' MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL

### A. *Background Facts*

Count Four of the Indictment charged defendant Kevin Davis with attempting to kill Marilyn Morrison, with the intent to prevent her from communicating information to law enforcement officers relating to the commission of federal offense, in violation of 18 U.S.C. section 1512(a).

Following the close of the government's case, defendant moved for a directed judgement of acquittal, under Rule 29(a), on grounds that the government failed to prove that he shot Marilyn Morrison with the intent of preventing the communication to law enforcement officials of information concerning the commission of federal offenses. The motion was denied.

On March 17, 1989, defendant was convicted of one count of obstruction of justice.

Defendant now renews the motion for judgement of acquittal and also brings a motion for new trial.

### B. *Standard of Review*

On a motion for judgment of acquittal, a court should set aside the jury's verdict only if, viewing the evidence in a light most favorable to the government, any rational trier of fact could not have found the essential elements of the crime to be proven beyond a reasonable doubt. *Jackson v.*

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Johnson,* 804 F.2d 1078, 1083 (9th Cir. 1986). The government is entitled to all reasonable inferences that might be drawn from the evidence. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Beecroft,* 608 F.2d 753, 756 (9th Cir.1979).

■ A motion for new trial should be granted only in those cases in which the evidence preponderates highly against the verdict. *United States v. Pimentel,* 654 F.2d 538, 545 (9th Cir.1981); *United States v. Rush,* 749 F.2d 1369, 1371 (9th Cir.1984). The evidence is sufficient to support a conviction if, reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements beyond a reasonable doubt. *Rush,* 749 F.2d at 1372 (citing *United States v. Marabelles,* 724 F.2d 1374, 1377 (9th Cir.1984). Conflicting evidence is resolved in favor of the verdict. *United States v. Ramos,* 558 F.2d 545, 546 (9th Cir.1977).

### C. *Discussion*

■ Defendant contends that there was no evidence that he had knowledge or belief that there would be a federal case, or that federal offenses were at issue. Defendant argues that even viewing the evidence in a light most favorable to the prosecution, the most that can be said is that the government proved that defendant shot Marilyn Morrison on orders from Sonnie Davis, and that he did so because he wanted to prevent her from being a prosecution witness in the Alameda County criminal case.

This Court is not persuaded by defendant's argument. Viewing all the evidence in a light most favorable to the government,[3] there is more than sufficient evidence for a rational trier of fact to find the challenged element of section 1512(a) beyond a reasonable doubt. The evidence, considering all the inferences that can be

---

**3.** Although defendant contends that this is not the proper standard on a motion for new trial, and cites a Louisiana district court as support,

defendant is wrong on the law in this Circuit. *See United States v. Rush, supra,* 749 F.2d at 1372.

**1442**

fairly drawn from it, amply supports the finding that defendant shot Marilyn Morrison with the intent of preventing the communication to law enforcement officials of information concerning the commission of federal offenses. Specifically, the evidence established that:

(1) Sonnie Davis, Marilyn Morrison, and Avis Andrews were told in Oakland Municipal Court that the case was going to be federally prosecuted;

(2) Kevin Davis and James Walker went to two of the Oakland Municipal Court appearances for Sonnie Davis, Marilyn Morrison, and Avis Andrews;

(3) Sonnie Davis told Carolyn Davis to tell James Walker that he wanted Marilyn Morrison shot in the head, and Carolyn Davis relayed the message to James Walker;

(4) prior to the shooting, Kevin Davis went to Marilyn Morrison's house and discussed the possibility of Avis Andrews testifying against Sonnie Davis;

(5) Marilyn Morrison told Kevin Davis and James Walker that she was paranoid about the fact that the case was going to be a federal case;

(6) the Wednesday before the shooting, Kevin Davis and Waddell Davis visited Sonnie Davis at North County Jail;

(7) Kevin Davis told James Walker that he was going to shoot Marilyn Morrison because she was going to testify;

(8) On April 23, 1988, Kevin Davis shot Marilyn Morrison in the head and said "this is from Sonnie."

Although there was no direct evidence that Kevin Davis was directly told that there would be a federal case or that federal offenses were at issue, there was sufficient circumstantial evidence from which the jury could reasonably have inferred that Kevin Davis shot Marilyn Morrison because he wanted to prevent her from testifying against Sonnie Davis in his federal prosecution and because he was aware of the fact that a federal prosecution was imminent. Accordingly, this Court denies defendant Kevin Davis' motion for judg-

ment of acquittal and motion for a new trial.

## IV. CONCLUSION

For all of the foregoing reasons, this Court: (1) DENIES defendant Sonnie Davis' motions for new trial, to vacate the convictions and to dismiss the Indictment; (2) DENIES defendant Sonnie Davis' speedy trial motion to vacate judgment of conviction; and (3) DENIES defendant Kevin Davis' motion for new trial and motion for judgment of acquittal.

IT IS SO ORDERED.