**UNITED STATES of America,**

v.

**Osvaldo MARTINEZ, Defendant.**

**No. S2 92 Cr. 839 (SWK).**

United States District Court,
S.D. New York.

March 7, 1994.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City by Maria A. Barton, for U.S.

Silver Golub & Teitell, Stamford, CT by Mario DiNatale, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Defendant Osvaldo Martinez ("Martinez") was charged in a two-count Indictment with conspiracy to possess a quantity of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(B), and failure to appear, in violation of 18 U.S.C. §§ 3146(a)(1) and 3146(b)(1)(A)(i). On November 1, 1993, he pled guilty to the failure-to-appear charge. Thereafter, on November 9, 1993, a jury convicted Martinez of narcotics conspiracy. Martinez now moves for a judgment of acquittal, or in the alternative, for a new trial. For the reasons set forth below, Martinez's motion is denied.

## BACKGROUND

### I. The Government's Case–In–Chief

In the Government's case-in-chief, the following witnesses testified: Jose Sandler

("Sandler"), a co-defendant in this action who pled guilty to narcotics and weapons conspiracy charges; Christopher Joseph ("Joseph"), a paid confidential informant ("CI"); Delano Reid ("Agent Reid"), an undercover agent of the Bureau of Alcohol, Tobacco and Firearms ("ATF"); and Charles W. Fredericks ("Special Agent Fredericks"), a special agent with the ATF. These witnesses testified as follows.

On July 20, 1992, Sandler spoke by telephone with the CI, Joseph, and agreed to sell him cocaine and several firearms. Sandler knew Joseph from prior occasions in which he had sold Joseph both weapons and narcotics. Thereafter, on September 14, 1992, Sandler called Joseph from Baltimore, Maryland, where he had been placed on probation after pleading guilty to a state narcotics charge. He offered to sell Joseph one kilogram of cocaine for $25,000 and various firearms. They agreed to meet at Grant Avenue and 165th Street, Bronx, New York (the "Grant Avenue vicinity") on September 17, 1992, to effectuate the narcotics transaction (the "September 17th Transaction").

Between September 14 and September 17, 1992, Sandler contacted several sources to obtain the cocaine and firearms, including Nestor Cabrera ("Cabrera"). Sandler told Cabrera to contact his own source for the cocaine, but Cabrera never told Sandler the name of his source.

On September 17, 1992, the CI, Joseph, arrived at the Grant Avenue vicinity with undercover Agent Reid. Sandler, Cabrera and Sandler's wife met Joseph and Agent Reid, and told them that they did not have the narcotics. Joseph and Agent Reid therefore arranged to meet Sandler and Cabrera later that night. During this initial meeting, Cabrera made several calls on a cellular telephone.

Later that evening, Joseph and Agent Reid arrived at the Grant Avenue vicinity a second time to conclude the deal. Sandler and Cabrera were not able to provide the narcotics at this meeting either, although Cabrera made additional calls on his cellular telephone. Sandler asked Joseph and Agent Reid to travel to another location where the cocaine would be produced, but Joseph and Agent Reid declined to do so. Cabrera then told Sandler that he would attempt to persuade his source to come to the Grant Avenue vicinity, and Joseph and Agent Reid left the area. Cabrera also left the location.

That same night, Joseph and Agent Reid again returned to the Grant Avenue vicinity to meet Sandler. By then, Cabrera had also returned, accompanied by Martinez and an individual named Jose Cristobal ("Cristobal"). Sandler was introduced to Martinez as the source of the cocaine, and Martinez told Sandler that initially he had been reluctant to conduct the deal on the street. Martinez asked Sandler whether he knew the customer and had seen the buy money, and Sandler replied affirmatively.

When Joseph and Agent Reid arrived, Sandler approached them and told them that he now possessed the narcotics. Sandler then introduced Joseph to Martinez and Cristobal, and stated that "these were the guys with the cocaine." Tr. at 163. Joseph and Cristobal began walking up 165th Street towards the Grand Concourse, with Cristobal and Martinez following. Sandler and Agent Reid remained behind with the purported purchase money.

As they walked, Cabrera spotted one of the ATF surveillance cars. Cabrera said, "policia," and the group halted. Martinez told the group to wait for approximately five minutes. After the car drove away, Martinez instructed the group to proceed. At the end of the block, Martinez and Cristobal remained behind while Joseph and Cabrera crossed the street and went inside Cabrera's blue Oldsmobile. Inside the car, Cabrera produced a package containing a substance later identified as cocaine. After Joseph approved of the narcotics, Cabrera asked to see the purchase money.

Joseph and Cabrera then returned to the corner where Martinez and Cristobal were waiting. Martinez asked if Joseph was satisfied and Joseph replied affirmatively. Martinez and Joseph then discussed the possibility of doing future business together.[1] The

---

1. During direct examination, Joseph testified that    he said to Martinez that "we'll be doing future

group arrived at the Grant Avenue vicinity, whereupon Sandler, Cabrera, Cristobal and Martinez were arrested.[2] After the arrest, ATF agents found a kilogram of cocaine in Cabrera's blue Oldsmobile. ATF agents also found Martinez's car parked immediately behind Cabrera's car.

At trial, the Government presented evidence of Martinez's failure to appear at a hearing before this Court on December 9, 1992, and his use of an alias when re-arrested on February 3, 1993. In addition, the Government presented evidence of the defendant's 1989 conviction in the state of Virginia for narcotics conspiracy.

## II. The Defense

During cross-examination, Martinez emphasized that the Government did not produce any physical evidence to corroborate the testimony of its witnesses. Thus, according to the Government's witnesses, Martinez's fingerprints were not matched with the latent prints discovered on the packages of cocaine. Furthermore, despite knowing Sandler's beeper number as early as July 20, 1992, the Government did not attempt to "clone" his beeper, or obtain records relating to the beeper. No physical surveillance was conducted of Sandler's activities between September 14 and September 17, 1992, nor was any attempt made to obtain telephone records of a public telephone from which Sandler contacted his sources. In addition, the Government did not photograph, videotape or record the September 17th transaction.

Martinez also spent considerable time at trial seeking to impeach the credibility of the Government's witnesses. For instance, Martinez pointed out that Sandler pled guilty to narcotics and weapons conspiracy charges in this case, and was promised a letter from the Government at sentencing, pursuant to § 5K1.1 of the Federal Sentencing Guidelines Manual, in exchange for his cooperation. Sandler admitted that he continuously sold narcotics between 1985 and the time of his arrest. In addition, Martinez emphasized that Joseph was a paid confidential informant who previously had been convicted of state narcotics offenses in Maryland.

## III. The Cellular Telephone

Martinez contends that the Government did not disclose prior to trial that Cabrera used a cellular telephone (the "cellular telephone"), as opposed to a regular telephone, to contact his source on September 17, 1992. According to Martinez, the Government also did not provide the telephone, or its records, during discovery.[3] During its opening statement, however, the Government stated that Cabrera used a cellular telephone, on September 17, 1992, to contact his source for the cocaine. Sandler and Joseph also testified that Cabrera made several calls on a cellular telephone. The Government did not seek to admit the cellular telephone, or its records, into evidence at trial.

At a proffer session prior to trial, on January 20, 1993, Cabrera stated that he had purchased the cellular telephone on the street. Cabrera also stated that, on September 17, 1992, he had used the cellular telephone to call a bar in the Bronx to speak with Martinez about obtaining the cocaine for the September 17th transaction. The Gov-

---

business together." Tr. at 168. Joseph was presented with his prior inconsistent statement during cross, however, in which Joseph indicated that Martinez actually suggested the possibility of future business. Tr. at 246.

2. Cabrera pled guilty to narcotics conspiracy and weapons charges. The Government filed a *nolle prosequi* with respect to Cristobal.

3. Specifically, Martinez contends that he repeatedly requested that the Government produce, among other things, all objects that were material to the preparation of his defense, pursuant to Fed.R.Crim.P. 16(a)(1)(C). *See, e.g.,* letter from Mario DiNatale ("DiNatale"), counsel for the de-

fendant, to Assistant United States Attorney Maria Barton ("Barton") of 10/21/93; letter from DiNatale to Barton of 9/27/93; letter from DiNatale to Barton of 8/26/93, annexed to the defendant's Reply Memorandum of Law ("Def. Reply") as Exhs. "E," "D" and "B." The Government did not reveal the existence of the cellular telephone in response to these requests. Furthermore, Martinez contends that none of the material produced by the Government during discovery indicated that a cellular telephone was used by Cabrera during the September 17th transaction, or that such phone had been recovered during the course of Cabrera's arrest.

ernment did not call Cabrera as a witness during its case-in-chief. When called to the stand by the defendant, Cabrera invoked his Fifth Amendment right.

Accordingly, Martinez attempted to seek information about the cellular telephone from the Government's other witnesses. During cross-examination, Special Agent Fredericks testified that he did not recall whether Cabrera used a cellular phone to make phone calls during the evening of September 17, 1992. Special Agent Fredericks also testified that he did not recall whether a cellular phone had been recovered from Cabrera at the time of the arrest. Agent Reid also testified that he did not know whether a cellular telephone had been seized after Cabrera was arrested.

The Government now concedes that a cellular telephone was, in fact, recovered at the time of Cabrera's arrest, as part of Cabrera's personal effects.[4] In December 1992, an Assistant United States Attorney issued a subpoena for the cellular telephone's records. Thereafter, William A. Temple ("Special Agent Temple"), a special agent with the ATF, spoke with a customer service manager at Cellular One in Rochester, New York. The customer service manager informed Special Agent Temple that, if the telephone had been stolen and reprogrammed to use an unauthorized account, it would not be possible to obtain the telephone records. As a result, Special Agent Temple did not execute the subpoena.

In connection with the defendant's post-trial motion, Special Agent Temple contacted Cellular One again and eventually retrieved the telephone records for Cabrera's cellular telephone. The Government provided these records to the defendant for the first time on January 14, 1994. See the telephone records, annexed to the Government's Sur–Reply in Opposition to the Defendant's Post–Trial Motion as Exh. "B." The telephone number of the Bronx bar at which Cabrera allegedly telephoned Martinez does not appear on these records.

Presently before the Court is Martinez's motion for a judgment of acquittal, or in the alternative, for a new trial. The Court will consider each of the defendant's contentions in turn.

## DISCUSSION

### I. Motion for Judgment of Acquittal

Martinez contends that the evidence is insufficient to sustain his conviction for conspiracy to distribute cocaine. Federal Rule of Criminal Procedure 29 provides that a court shall order the entry of judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." Fed.R.Crim.P. 29. The defendant bears a heavy burden in challenging a conviction based on insufficient evidence. *United States v. Soto*, 959 F.2d 1181, 1185 (2d Cir. 1992); *United States v. Rivera*, 971 F.2d 876, 890 (2d Cir.1992). "A conviction must be upheld if, after viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in its favor, 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Medina*, 944 F.2d 60, 66 (2d Cir.1991) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992). Moreover, the Government "is not required 'to preclude every reasonable hypothesis which is consistent with innocence.'" *United States v. Puzzo*, 928 F.2d 1356, 1361 (2d Cir.1991) (quoting *United States v. Chang An–Lo*, 851 F.2d 547, 554 (2d Cir.), *cert. denied*, 488 U.S. 966, 109 S.Ct. 493, 102 L.Ed.2d 530 (1988)). Thus, "'[a] jury's verdict will be sustained if there is substantial evidence, taking the view most favorable to the government, to support it.'" *Id.* (quoting *United States v. Nersesian*, 824 F.2d 1294, 1324 (2d Cir.), *cert. denied*, 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987)).

▮ Viewing the evidence in the light most favorable to the Government, the Court

---

4. Martinez claims that he did not know that the cellular telephone had been recovered until the

Government so indicated in their post-trial brief.

finds that there was sufficient evidence for a jury to find that Martinez was a member of a conspiracy to sell narcotics, and that he committed overt acts in furtherance of that conspiracy. The evidence showed that, while Cabrera repeatedly attempted to contact his "source" to obtain the narcotics for the transaction, it was not until Martinez appeared at the Grant Avenue vicinity that the narcotics became available. Furthermore, the evidence indicated that Martinez was more than "merely present" at the Grant Avenue vicinity during the time of the drug transaction. Martinez told Sandler that he had been reluctant to conduct the deal at the Grant Avenue vicinity, and spoke to Sandler about the customer and the purchase money. Martinez then walked several blocks with Joseph, Cristobal and Cabrera in the direction of Cabrera's automobile, where the narcotics were stored. Martinez's car was parked directly behind Cabrera's car. In addition, when Cabrera spotted the ATF surveillance car, Martinez instructed the group to wait for approximately five minutes, and then to proceed. Finally, after Joseph viewed the narcotics, Martinez asked him if he was satisfied, and the two men discussed the possibility of doing future business together. The Government also presented proof of Martinez's guilty plea to the bail-jumping count, as well as his prior narcotics conviction[5] as evidence of knowledge and intent. Based upon this evidence, it was reasonable for a jury to conclude that Martinez was guilty of narcotics conspiracy. Accordingly, the defendant's motion for a judgment of acquittal is denied.

## II. New Trial

### A. Interests of Justice

■ In the alternative, Martinez moves, pursuant to Fed.R.Crim.P. 33, for a new trial. Rule 33 provides: "The court on motion of a defendant may grant a new trial to that defendant if required in the interests of justice." In exercising its discretion pursuant to Rule 33, the Court is "entitled to 'weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.'" *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir.1992) (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980)). It is only in exceptional circumstances, however, such as where the testimony is patently incredible or defies physical reality, that the Court may intrude upon the jury's assessment of credibility. *Id.* at 1414. Accordingly, while the Court's discretion is broad, there are limits to it. "The court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *United States v. Martinez*, 763 F.2d 1297, 1312–13 (11th Cir. 1985). The Court should exercise its discretion sparingly, and new trials "should be granted 'only in exceptional cases in which the evidence preponderates heavily against the verdict.'" *United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir.1984) (quoting *United States v. Pimental*, 654 F.2d 538, 545 (9th Cir.1981)).

Martinez argues that the weight of the evidence points to the conclusion that the Government failed to prove guilt beyond a reasonable doubt. Specifically, Martinez contends that the testimony of the Government's two key witnesses, Sandler and Joseph, was not credible, and that the Government failed to corroborate their testimony with any physical or forensic evidence. According to the defendant, "[e]ssentially, the government proved only that Martinez was standing on a street corner with three other men on a warm September night, and that he then took a walk with these men." *See* Memorandum of Law in Support of Defendant's Motion for Judgment of Acquittal, or in the Alternative, for a New Trial, at 11.

■ It is well settled that "mere presence at the scene of a crime, association with

---

5. Martinez argues that he was prejudiced by the Court's delay in giving the jury a curative instruction regarding the admission of his prior narcotics conviction into evidence. In fact, the defendant requested a limiting instruction in the late morning of December 8, 1993. Thereafter, the jury was dismissed for the day at approximately noon. The next morning, before proceeding, the Court gave the limiting instruction to the jury. This half-day delay could not have prejudiced Martinez, particularly in light of the fact that the entire trial lasted merely a few days, and involved one count against one defendant.

criminals, or even knowledge that a crime is being committed is insufficient to support a conviction ... absent some purposeful behavior from which the requisite intent can be inferred." *United States v. Jones,* 605 F.Supp. 513, 515 (S.D.N.Y.1984); *see also United States v. Johnson,* 513 F.2d 819, 824 (2d Cir.1975) ("Guilt may not be inferred from mere association with a guilty party."). Evidence that the defendant knowingly participated in the conspiracy is necessary. *United States v. Soto,* 716 F.2d 989, 991 (2d Cir.1983).

Upon careful consideration of all of the testimony introduced at Martinez's trial, the Court concludes that there was ample evidence to support the defendant's conviction. Unlike cases in which a defendant was "merely present" during a drug transaction, the Government introduced evidence in this case to establish that Martinez knowingly participated in the conspiracy. Specifically, Sandler testified that Martinez said he initially was reluctant to conduct the deal on the street, and asked Sandler if he knew the customers and had seen the purchase money. Joseph testified further that Martinez accompanied the group to see the narcotics. According to Joseph, Martinez directed the group to stop upon observing a police vehicle, and then directed the group to proceed when the police vehicle left the area. Joseph also testified that Martinez asked him if he was satisfied with the cocaine, and they discussed the possibility of doing future business together. Finally, the Government introduced evidence of the defendant's failure to appear at a hearing before this Court, and his use of an alias when rearrested two months later, as evidence of consciousness of guilt.[6] In light of this evidence, it was reasonable for the jury to conclude that Martinez knowingly participated in the conspiracy to possess with intent to distribute cocaine.

The Court finds that there are no exceptional circumstances here to warrant intrusion upon the jury's assessment of the witnesses' credibility. Similarly, the Court rejects the defendant's argument that the fact that the Government filed a *nolle prosequi* with respect to Cristobal is evidence that Sandler and Joseph's testimony was incredible. Martinez contends that the testimony implicating Cristobal is suspect as the Government has concluded that Cristobal is not guilty. However, the Court cannot infer from the Government's decision not to prosecute Cristobal that Cristobal is, in fact, not guilty. *See United States v. Delgado,* 903 F.2d 1495, 1499 (11th Cir.1990), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 681, 112 L.Ed.2d 673 (1991); *United States v. Sangmeister,* 685 F.2d 1124, 1127 (9th Cir.1982) ("A *nolle prosequi* has been found not the equivalent of an acquittal."). As the Government itself has indicated, "[t]he *nolle* with respect to Cristobal does not constitute any statement by the Government that Cristobal is innocent of the charges contained in the indictment." *See* letter from Barton to the Hon. Shirley Wohl Kram of 11/1/93, at 2, annexed to the Government's Memorandum of Law in Opposition to the Defendant's Posttrial Motions as Exh. "B."

The Court also finds that the admission of co-conspirator statements made in furtherance of the conspiracy need not be further corroborated by physical or forensic evidence. *United States v. Simmons,* 923 F.2d 934, 954 (2d Cir.), *cert. denied,* 500 U.S. 919, 111 S.Ct. 2018, 114 L.Ed.2d 104 (1991); *see also United States v. Gordon,* 987 F.2d 902, 906 (2d Cir.1993) ("A conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt."). Thus, the Court finds that Martinez received a fair trial, and that the interests of justice would not be served by granting him a new one.

**B. New Evidence**

Martinez also moves, pursuant to Fed. R.Crim.P. 33, for a new trial on the ground

---

6. Martinez contends that evidence of his failure to appear before this Court is not evidence of consciousness of guilt, as he did not flee the jurisdiction. The Court concluded in a Memorandum Opinion and Order dated August 19, 1993, however, that the Government need not show that Martinez actually fled the jurisdiction in order to show that his failure to appear was motivated by a desire to avoid prosecution. *See United States v. Martinez,* S2 92 Cr. 839, slip op. at 17, 1993 WL 322768 (S.D.N.Y. Aug. 19, 1993).

of newly discovered evidence. The defendant contends that the Government failed to provide him with the cellular telephone or any of its records, despite repeated requests by defense counsel for all items to which he was entitled, pursuant to Federal R.Crim.P. 16. Accordingly, the Court first must determine whether the Government was required to provide the defendant with information regarding the cellular telephone, pursuant to Rule 16, and, if so, whether the Government's failure to provide this information warrants a new trial.

### 1. Rule 16

Fed.R.Crim.P. 16(a)(1)(C) provides:

Upon request of the defendant the government shall permit the defendant to inspect ... tangible objects ... which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense....

"Evidence that the government does not intend to use in its case in chief is material if it could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir.1993). The Government should interpret the language of Rule 16 broadly to ensure fairness to the defendant. *See United States v. NYNEX Corp.*, 781 F.Supp. 19, 25 n. 8 (D.D.C.1991).

■ The Government contends that the telephone records are immaterial, as (1) neither the telephone nor its records were used by the Government as evidence at trial; (2) the telephone was not obtained from, and did not belong to Martinez; and (3) the Government believed that the telephone records were unavailable. The Court disagrees. This Court has held that telephone records are discoverable objects to which the defendant is entitled. *See United States v. Feola*, 651 F.Supp. 1068, 1144 (S.D.N.Y.1987), *aff'd*, 875 F.2d 857 (2d Cir.1989), *cert. denied*, 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989); *see also United States v. Taylor*, 707 F.Supp. 696, 702 (S.D.N.Y.1989) (finding that a request for a list of physical evidence seized from the defendant "or any other person, place or vehicle relevant to the charges" falls within the scope of Rule 16(a)(1)(C)). Although the Government did not seek to

admit the telephone and its records into evidence, it did present evidence at trial to suggest that Cabrera used the cellular telephone to contact his source for the cocaine. Accordingly, while Martinez did not own the telephone and did not use it during the September 17th transaction, the cellular telephone certainly was relevant to the charges brought against him.

Furthermore, while the Government argues that it was reasonable for it to conclude that the cellular telephone records were unavailable, the Court finds that the Government's investigation into the availability of the telephone records was cursory at best. The Government's investigation consisted of one telephone conversation between Special Agent Temple and an unnamed customer service manager at Cellular One in Rochester, New York. After the customer service manager informed Special Agent Temple that, if the telephone had been stolen and reprogrammed to use an unauthorized account, it would not be possible to obtain the telephone records, Special Agent Temple failed to inquire further. The Court finds that this one telephone conversation is an insufficient basis for the Government to conclude that the records were not available. Accordingly, the Court finds that the cellular telephone and its records were evidence "material to the defense," within the meaning of Fed.R.Crim.P. 16.

### 2. New Trial

■ As the Court finds that the cellular telephone and its records were "material," it must next determine whether the Government's withholding of this evidence entitles the defendant to a new trial. The Government's failure to disclose evidence that should have been disclosed does not automatically entitle the defendant to a new trial in the absence of substantial prejudice. In assessing whether the failure to disclose was prejudicial, the Court must analyze the "nature of the evidence sought, the extent to which it bore on critical issues in the case, the reason for its nonproduction, and the strength of the government's untainted proof." *United States v. Stevens*, 985 F.2d at 1181. Moreover, "[w]here the government's failure to disclose is merely inadvertent or negligent, a new trial is required only if

'there is a significant chance that the added item ... could have induced a reasonable doubt in the minds of enough jurors to avoid conviction.' " *United States v. Maniktala,* 934 F.2d 25, 29 (2d Cir.1991) (quoting *United States v. Petito,* 671 F.2d 68, 74 (2d Cir.), *cert. denied,* 459 U.S. 824, 103 S.Ct. 56, 74 L.Ed.2d 60 (1982)); *United States v. Morell,* 524 F.2d 550, 550 (2d Cir.1975).

As an initial matter, the Court finds that the Government's failure to disclose the existence of the cellular telephone, while negligent, was not done in bad faith. The Government made one attempt to locate the telephone records and was told by the telephone company that such records were unavailable. While the Government's efforts to locate the telephone records may not have been thorough, there is nothing to indicate that its failure to inquire further was intentional. As for the telephone itself, while it should have been provided to the defense prior to trial, the Court finds that the Government did not act in bad faith when it erroneously concluded that the telephone was insignificant, particularly in light of the fact that the Government did not seek to admit the telephone into evidence at trial.[7] Accordingly, as the Court finds that the Government's failure to disclose was the result of mere inadvertence or negligence, it must next determine whether there is a significant chance that disclosure of the telephone would have affected the jury's verdict.

The Court finds that the Government's failure to disclose the existence of the cellular telephone and its records, while unfortunate, did not cause the defendant substantial prejudice. The Government did not seek to admit the telephone into evidence, and presented no evidence at trial that Cabrera used the cellular telephone to call any particular person at any particular location. Furthermore, the information provided by Cabrera at his proffer session as to the precise location he called and the particular individual he spoke to has no bearing on this case, as Cabrera did not testify at trial. Thus, the testimony

regarding the telephone was relevant solely to show that Cabrera was attempting to contact a source for the cocaine.

Furthermore, even had Martinez been given the opportunity to show that none of the telephone calls were linked to him, the Government provided sufficient evidence at trial to show that Martinez participated in the September 17th transaction. As the Government indicated, the evidence showed that when Cabrera finally obtained the cocaine, he was accompanied by Martinez and Jose Cristobal; that Martinez had parked his car directly behind Cabrera's; that after Martinez was introduced to co-conspirator Jose Sandler, Martinez checked on the reliability of the customer and confirmed the existence of the purchase money; that before the confidential informant ("CI") went to see the cocaine, he was introduced to Martinez; that Martinez accompanied the CI and the others to see the cocaine; that Martinez instructed the group when to wait and proceed when the surveillance car was spotted; that Martinez waited until the CI had seen the cocaine in the car with Cabrera; that afterwards Martinez confirmed with the CI that he was satisfied with the cocaine; and that Martinez returned with the CI and others to collect the purchase money.

*See* the Government's Sur–Reply in Opposition to the Defendant's Post-trial Motion, at 4–5. In light of these facts, the Court finds that the Government's failure to disclose the cellular telephone and its records prior to trial did not cause Martinez substantial prejudice.

## CONCLUSION

For the reasons set forth above, Martinez's motion for a judgment of acquittal, or in the alternative, for a new trial, is denied.

SO ORDERED.

---

7. Martinez contends that the Government intentionally suppressed or ignored the existence of the cellular telephone, as it did not provide the phone in response to his several requests for all items "material to the preparation of defendant's defense." *See, e.g.,* letter from DiNatale to Bar-

ton of 8/26/93, at 1, annexed to the Def. Reply as Exh. "B." As the defendant's requests were quite broad, however, the Court finds that the fact that the Government did not view the cellular telephone as "material" was negligent, rather than deliberate.